POPOSKEY, Appellant, vs. MUNKWITZ, Respondent.

*February 5 — March 1, 1887.*

*Landlord and tenant: Breach of covenant for quiet enjoyment: Measure of damages.*

1. One who executes a lease of a store, knowing that he cannot put the lessee in possession because another is in possession under a valid prior lease executed by himself and not yet expired, is liable to the second lessee for the whole loss proximately sustained by reason of the failure to put him in possession. But the latter should use all reasonable diligence to procure another suitable place in which to carry on his business.

2. In such a case, where the second lessee has advanced rent, and incurred expense in removing goods to such store, with the lessor's consent, and in taking them away again on his failure to obtain possession, he is entitled to recover, in an action for a breach of the covenant for quiet enjoyment, the amount of rent so advanced, with interest, and the expenses so incurred; and in addition thereto, if the lessor did not know the purposes for which the premises were hired, the difference between the rent reserved and the actual rental value of the premises; but, if the lessor did know for what they were hired, then the difference between the rent reserved and the rent which he would be compelled to pay for another store equally well adapted to his business, and the additional expense, if any, of removing his goods thereto; or, in case he could not procure another suitable store for his business, then all the damages proximately resulting to his business from the breach of covenant, the value of the lease being a part thereof.

3. In an action for the breach of a covenant for quiet enjoyment in a written lease, where it appears that the lessor knew at the time of its execution that he could not give possession because of the existence of a prior valid and unexpired lease to another lessee, parol evidence is admissible on the part of plaintiff to show that he was unable after reasonable diligence to procure another store suitable to his business, and, that being *prima facie* established, to show the value of his business, and the special damage thereto by loss of anticipated profits.

4. The giving of a lease of premises to take effect while they are in the actual possession of a prior lessee under a valid unexpired lease, does not necessarily operate as an assignment of the rent accruing under such prior lease, so as to preclude the second lessee from recovering from the lessor the rent advanced by him.

APPEAL from the Circuit Court for *Milwaukee* County.

The action is by a lessee against his lessor for failure of the latter to give the lessee possession of the leased premises according to the covenants in the lease.

Under date of October 22, 1884, the parties executed an indenture of lease, in and by which the defendant leased to the plaintiff his store, No. 411 Broadway in the city of Milwaukee, from November 15, 1884, to May 1, 1890, at a yearly rent therein reserved, and therein covenanted that, on paying such rent and performing the conditions contained in such lease to be performed by him, the plaintiff should have the quiet and peaceful possession of the leased premises during such term. The defendant was unable to give the plaintiff the possession of the leased store because he had theretofore leased the same to Wilde & Uhlig for three years, commencing May 1, 1883, and Uhlig was lawfully in possession thereof under such lease when the plaintiff's term under his lease commenced, and so continued in possession thereafter. The plaintiff paid the defendant the rent until December 1, 1884, at the execution of the lease,— being $41.67,— as stipulated in the lease, and performed all his covenants therein contained. The plaintiff also put some goods in the store with the consent of the defendant, but was required by Uhlig to take them away. This involved an expenditure by the plaintiff of $14.40.

It is averred in the complaint that for twelve years before the making of the lease first above mentioned the plaintiff had carried on, in the city of Milwaukee, and for the last five years in the vicinity of the leased store, a wholesale and retail business in pictures, picture-frames, and artist's materials, and in manufacturing picture-frames, and had a very large and lucrative custom and patronage established in said business; that he leased the store No. 411 Broadway for the purpose of carrying on and continuing the same business therein, of which the defendant had no-

tice; that such store was especially well located and adapted to the requirements of plaintiff's said business; that, relying upon having possession of the leased store at the stipulated time in which to carry on his business, he purchased a large stock of goods adapted to the holiday trade in December, which is the most profitable trade during the year; and that he lost this trade by reason of his failure to obtain possession of the store. Also that upon the refusal of defendant to give him possession of the store the plaintiff diligently endeavored, but without success, to obtain another store suited to the requirements of his business, and that the rental value of the leased store for the term of the lease is at least $2,000 more than the rent thereof reserved in the lease. The closing paragraph of the complaint is as follows: "That by reason of the premises plaintiff's said business has been broken up and destroyed, and his trade and custom gone, and his stock of goods purchased to carry on his business at said store so leased has become greatly depreciated and destroyed in value, and plaintiff has lost the profits which he would and could have made in continuing and carrying on his aforesaid business at said leased premises since said 15th day of November, 1884, had said leased premises been surrendered and delivered up to him as agreed by defendant, and his said leasehold interest in said premises been lost and destroyed, to the damage of plaintiff in the sum of $5,000." Judgment for $5,000 and costs is demanded.

The answer denies in detail each of the above averments, except that the defendant owned the store No. 411 Broadway, and executed a lease thereof to the plaintiff as alleged in the complaint.

The controversy on the trial was confined to the question of damages. The plaintiff offered testimony for the purpose of proving the special damages stated in the complaint, but the same was rejected, and the judge held that the measure of the plaintiff's damages is the difference be-

tween the rent reserved in the lease and the actual rental value of the store, together with the expense of removing the plaintiff's goods (before mentioned) from the store after the term of the lease commenced, and confined the testimony to those elements of damages. Only a single question was submitted to the jury, which is as follows: "What was the actual value per annum of the premises 411 Broadway, Milwaukee, described in the lease from defendant to plaintiff, from and after November 15, 1884?" The jury answered $1,200. The rent reserved in the lease until May 1, 1887, is $1,000, and $1,200 thereafter.

On April 5, 1886, the court gave judgment for the plaintiff for $272.14 damages, and for costs of suit. It is recited in the order for judgment that the plaintiff admitted he went into possession of the leased store March 1, 1886. It is understood that the judgment is made up of $200 per annum (being the excess in the value of the rent as found by the jury, over and above the rent stipulated in the lease) from November 15, 1884, to March 1, 1886, and the item of $14.40 above mentioned. The item of $41.67 paid defendant on account of rent was disallowed for the reason (as stated by the court) that the lease to plaintiff "assigned, by operation of law, the premises during Uhlig's term to *Mr. Poposkey*, and he has the right to recover the rent from Mr. Uhlig." The plaintiff appeals from the judgment.

For the appellant there was a brief by *Dey & Friend*, and oral argument by *Mr. Dey*. As to the rule of damages in such cases, they cited 3 Suth. on Dam. 149–166; 2 Wait's Act. & Def. 463; *Pumpelly v. Phelps*, 40 N. Y. 59; *Mack v. Patchin*, 42 id. 167; *Eldred v. Leahy*, 31 Wis. 546; *Trull v. Granger*, 8 N. Y. 115; *Margraf v. Muir*, 57 id. 155; *Akerly v. Vilas*, 23 Wis. 207; *Townsend v. Nickerson Wharf Co.* 117 Mass. 501; *Cockburn v. Ashland Lumber Co.* 54 Wis. 619; *Hexter v. Knox*, 63 N. Y. 561; *Dobbins v. Duquid*, 65 Ill. 464; *Dexter v. Manley*, 4 Cush. 14; *Hinckley*

*v. Beckwith*, 13 Wis. 31; *Allison v. Chandler*, 11 Mich. 542; *Chapman v. Kirby*, 49 Ill. 211; *Avan v. Frey*, 69 Ind. 91; *Schile v. Brokhahus*, 80 N. Y. 614; *Menard v. Stevens*, 44 N. Y. Super. Ct. 515; *Bagley v. Smith*, 10 N. Y. 489; *Goebel v. Hough*, 26 Minn. 252; *Shafer v. Wilson*, 44 Md. 268; *Fairchild v. Rogers*, 32 Minn. 269.

For the respondent there was a brief by *Jenkins, Winkler, Fish & Smith*, and oral argument by *Mr. Winkler*. As to the measure of damages, they cited *Kinney v. Watts*, 14 Wend. 38; *Blossom v. Knox*, 3 Pin. 262; *Messer v. Oestreich*, 52 Wis. 695. This case is distinguishable from *Akerly v. Vilas*, 23 Wis. 207, and kindred cases, in that there was no fraud on the part of the lessor, but he acted in good faith, believing the prior lease to be void. The appellant was not entitled to recover for injuries to his business or loss of anticipated profits. Not having given up or abandoned his lease, he could not recover back the rent advanced by him, since that operated as an assignment of the rent reserved in the prior lease. Woodfall's L. & T. (10th ed.), 167, 168; *Harmer v. Bean*, 3 Car. & K. 307; R. S. sec. 2194; *Winterfield v. Stauss*, 24 Wis. 403; *Doe ex dem. Agar v. Brown*, 2 Ellis & Black, 331; *Shepheard v. Beetham*, L. R. 6 Ch. Div. 600; *Purdy v. Rakestraw*, 13 Brad. 481; *Allen v. Webster*, 56 Ill. 393; *Dudley v. Lee*, 39 id. 339; *Ball v. Chadwick*, 46 id. 28; *Dobson v. Culpepper*, 23 Gratt. 352.

LYON, J. This action was brought to recover damages for the failure of the defendant to put the plaintiff in the possession of the store No. 411 Broadway, Milwaukee, leased by the former to the latter, at the time stipulated in the lease as the commencement of the term. It is substantially an action for a breach of the covenant for quiet enjoyment contained in the lease. 1 Tayl. Landl. & Ten. § 309. This appeal presents for determination the question, What is the true rule of damages for a breach of that covenant in

that case, in view of the facts proved and offered to be proved therein?

The rule is undoubtedly the same as in an action for a breach of covenants for title in an absolute conveyance. That is to say, had the plaintiff purchased the store No. 411 Broadway of the defendant, and taken an absolute conveyance thereof instead of a lease for five or more years, under the same circumstances which existed when the lease was executed, the measure of his damages for a breach of the covenants for title in such conveyance would be the same that it is for a breach of the covenant for quiet enjoyment in the lease. 3 Suth. Dam. 147; *Blossom v. Knox*, 3 Pin. 262. Indeed, the covenant for quiet enjoyment is one of the covenants for title in a conveyance. Rawle, Cov. 17. It is also said to be " an assurance consequent upon a defective title." Id. 125.

The general rule of damages which obtains in England and many of our sister states for a breach of covenant for title was first authoritatively laid down in 1775, in the case in the common pleas of *Flureau v. Thornhill*, 2 W. Bl. 1078. The defendant covenanted to sell the plaintiff a rent for a term of years issuing out of leasehold premises, but, without fault on his part, the defendant was unable to make good title thereto. The plaintiff claimed damages for the loss of his bargain, but it was held that he was not entitled thereto. DE GREY, C. J., said: " Upon a contract for a purchase, if the title proves bad, and the vendor is (without fraud) incapable of making a good one, I do not think the purchaser can be entitled to any damages for the fancied goodness of the bargain which he supposes he has lost." BLACKSTONE, J., said: " These contracts are merely upon condition, frequently expressed, but always implied, that the vendor has a good title." The rule of the above case has been much considered in both England and this country; and while its scope has been more clearly defined, and its application

somewhat limited by later adjudications, the rule itself, as applied to cases in which the vendor honestly believed he had a good title but the title failed for some defect not known to him and of which he was not chargeable with notice, is now firmly established in the jurisprudence of England by the judgment of the House of Lords in *Bain v. Fothergill*, L. R. 7 Eng. & Ir. App. 158. As already observed, the rule prevails in several of the United States, including this state, under the limitations just mentioned of good faith and excusable ignorance of the vendor of defects in his title. Indeed, these are scarcely limitations but rather an interpretation of the qualification "without fraud," in the opinion by DE GREY, C. J., in the principal case. The rule as it now stands has been applied in this state in *Rich v. Johnson*, 2 Pin. 88; *Blossom v. Knox*, 3 Pin. 262; *Nichol v. Alexander*, 28 Wis. 118; *Messer v. Oestreich*, 52 Wis. 684, and in other cases.

Under this or any other rule, the plaintiff is entitled to recover the consideration paid by him on account of the purchase. Hence, in the present case, whatever may be the measure of damages, the plaintiff should have recovered the amount he advanced for rent and interest thereon. The reason given by the circuit judge for excluding this amount from the plaintiff's recovery, to wit, that he could recover the rent from Uhlig, the tenant under the paramount lease, is conceived to be unsound. The plaintiff did not purchase a term subject to the lease of Uhlig, but an absolute term; and while he might perhaps have treated his lease as an assignment of the rents accruing under the prior lease, and collected the same from Uhlig, there is no rule of law which compels him to do so. Indeed, had he done so, it possibly might have operated as a waiver of any claim for damages for the breach of the covenant sued upon.

The limitations of the rule of *Flureau v. Thornhill*, or rather the exceptions thereto, are well stated in 3 Suth.

Dam. 149, as follows: " Where a lessor knows, or is charge-able with notice, of such defect of his title that he cannot assure to his lessee quiet enjoyment for the term which such lessor assumes to grant; where he refuses, in violation of his agreement, to give a lease or possession pursuant to a lease, having the ability to fulfil, as well as where the lessor evicts his tenant,— he is chargeable with full damages for compensation, and the doctrine of *Flureau v. Thornhill* has no application. On this general proposition the authorities agree. In such cases the difference between the rent to be paid and the actual value of the premises at the time of the breach for the unexpired term is considered the natural and proximate damages. Where the lessee is deprived of the possession and enjoyment under such circumstances, the lessor is either guilty of intentional 'wrong, or he has made the lease and assumed the obligation to assure the lessee's quiet enjoyment with a culpable ignorance of defects in his title, or on the chance of afterwards acquiring one. In neither case has he any claim to favorable consideration; and he is not excused, on the doctrine of *Flureau v. Thorn-hill*, from making good any loss which the lessee may suf-fer from being deprived of the demised premises for the whole or any part of the stipulated term." This quotation doubtless contains a correct statement of the law acted upon in all the states, as well in those which have adopted the rule in *Flureau v. Thornhill* as in those which have not.

We are clear that this case comes within the exception. When the defendant leased the store to the plaintiff, he knew that there was a valid paramount lease upon the premises, executed by himself to Wilde & Uhlig, having seventeen or eighteen months to run after the commence-ment of the plaintiff's term. There is no claim that the former lessees had forfeited their lease. Indeed, the de-fendant afterwards made an unsuccessful attempt to evict them by legal proceedings for an alleged breach of the

covenants of their lease, occurring after the execution of the plaintiff's lease. But it was held there was no breach. *Munkwitz v. Uhlig*, 64 Wis. 380. These proceedings are in evidence. Hence the defendant knew, when he leased the store to the plaintiff, of a defect in his title which prevented him from assuring to the plaintiff the quiet enjoyment of the leased premises. He thus entered into the contract on the chance of being able afterwards to avoid in some way his lease to Wilde & Uhlig, but having no legal cause for avoiding it. These facts deprive him of the protection of the rule in *Flureau v. Thornhill*, and bring the lease within the rule above quoted from Sutherland. In other words, the case is thus brought within the general rule which prevails in actions for breaches of contracts, that the plaintiff shall recover the loss he has proximately sustained by reason of the breach.

But, in order to determine what elements of loss come within the general rule, it is necessary to apply other rules of law to the particular case. In the present case (perhaps in most cases) the rules laid down in the leading case of *Hadley v. Baxendale*, 9 Exch. 341, 26 Eng. L. & Eq. 398, which have many times been approved by this court, are sufficient. *Shepard v. Milwaukee G. L. Co.* 15 Wis. 318; *Hibbard v. W. U. Tel. Co.* 33 Wis. 558; *Candee v. W. U. Tel. Co.* 34 Wis. 471; *Walsh v. C., M. & St. P. R. Co.* 42 Wis. 30; *Hammer v. Schœnfelder*, 47 Wis. 455; *Brown v. C., M. & St. P. R. Co.* 54 Wis. 342; *Cockburn v. Ashland Lumber Co.* 54 Wis. 619; *McNamara v. Clintonville*, 62 Wis. 207; *Thomas, B. & W. Mfg. Co. v. W., St. L. & P. R. Co.* 62 Wis. 642; see, also, *Richardson v. Chynoweth*, 26 Wis. 656. See, also, a very learned and elaborate note on the rule in the principal case, in which a great number of cases are cited and discussed, in 1 Sedg. Dam. 218–239. These rules can best be stated by a quotation from the opinion in the principal case by ALDERSON, B. He says: "Where two

parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally, i. e., according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it. Now, if the special circumstances under which the contract was actually made were communicated by the plaintiffs to the defendants and thus known to both parties, the damages resulting from the breach of such a contract, which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from a breach of contract under these special circumstances so known and communicated. But, on the other hand, if these special circumstances were wholly unknown to the party breaking the contract, he, at the most, could only be supposed to have had in his contemplation the amount of injury which would arise generally and in the great multitude of cases not affected by any special circumstances from such a breach of contract. For, had the special circumstances been known, the parties might have specially provided for the breach of contract by special terms as to the damages in that case, and of this advantage it would be very unjust to deprive them."

Another rule having its foundation in natural justice should here be stated. In any case of a breach of contract the party injured should use reasonable diligence and make all reasonable effort to reduce to a minimum the damages resulting from such breach. The necessary expenses incurred by him in so doing may be recovered in an action for such breach. This rule was early laid down by this court in *Bradley v. Denton*, 3 Wis. 557, and has been followed since. For a full statement of the rule, and refer-

ences to numerous adjudications sustaining it, see 1 Suth. Dam. 148. Under this rule, when the plaintiff was informed that the defendant could not give him possession of the store as he had covenanted to do (which information was received by the plaintiff November 7th, being eight days before the commencement of his term), it became his duty to use all reasonable efforts to procure another suitable place in which to carry on his business, if the damages which otherwise would result from the breach of the defendant's covenant would be thereby diminished. We do not think, however, the plaintiff could be lawfully required to take another store out of the vicinity in which he was doing business when he took the lease from the defendant. By removing to a remote part of the city, he might and probably would, to some extent at least, have lost the goodwill of his business, which it is alleged he had carried on successfully for a series of years in the vicinity of the store No. 411 Broadway. Neither was he required to take another store not reasonably well adapted to his business.

From the foregoing rules, and the partial application of them already suggested, we think the following propositions are established:

(1) The plaintiff is entitled to recover the sum he paid as rent when the lease was executed, and interest thereon; and also the necessary expense of removing some of his goods to the store, with defendant's consent, and taking them therefrom after he failed to get possession of the store.

(2) If the defendant did not know, when he executed the lease, the purposes for which the plaintiff hired the store or the uses to which he intended to put it, the measure of the plaintiff's damages for breach of the covenant for quiet enjoyment (in addition to the special damages just mentioned) would be that adopted by the trial judge; that is, the difference between the rent reserved in the lease and the actual rental value of the store without regard to what

it is used for, which the jury found to be $200 per annum. All these are natural and proximate damages resulting from the breach.

(3) If the defendant then knew that the plaintiff was carrying on the business stated in the complaint and hired the store No. 411 Broadway for the purpose of continuing the same business therein, and if, in the exercise of reasonable diligence, the plaintiff might have procured another store, reasonably well adapted to his said business and in the same vicinity, that is, in a location in which he could have preserved and retained substantially the good-will of his former business, the rule of damages, in addition to the special items first above mentioned, will be the difference between the rent reserved in the lease and the actual rental value of the leased store for the purpose of carrying on such business therein. In such case the actual rental value would ordinarily be measured by the amount of rent the plaintiff would be compelled to pay for another store equally well adapted to his business. If he could obtain another store for the same rent he was to pay the defendant, or less, of course he would suffer no general damages for the defendant's breach of covenant, and his recovery in that behalf would be confined to nominal damages, in addition to the special damages first above mentioned. If, however, the expenses of removing to another store would have been greater than they would have been in removing to the store No. 411 Broadway, such excess would also be a proper item of damages.

(4) If the plaintiff could reasonably have procured another suitable store for his business, he cannot recover for damages to his business, because, by leasing and continuing his business in such other store, he might have avoided such damages.

(5) But knowing that the plaintiff hired the store for the purpose of continuing his former business therein (if he did

know it), and having executed the lease with knowledge that he could not put the plaintiff in possession of the store at the stipulated time because of his prior outstanding lease, the defendant took the risk of the plaintiff being able to procure another suitable store for his business. The inability of the latter to do so would render the defendant liable for the damages resulting to plaintiff's business by reason of the breach of covenant complained of. This is plainly within the rule of *Hadley v. Baxendale, supra,* because, under such circumstances, the parties may fairly be considered to have contemplated that the breach of the covenant would necessarily destroy or greatly impair the value of plaintiff's business. It should be observed that if the plaintiff recovers for damages to his business, he cannot also recover the value of his lease under the above second or third proposition, because such value is necessarily a factor in estimating the damages to the business. *Smith v. Wunderlich,* 70 Ill. 426, 433. He may, however, in that case, recover the special damages mentioned in the first proposition, for these are not such factors.

It follows that the testimony which was offered by the plaintiff to show that the defendant knew, when he executed the lease to the plaintiff, that the latter was carrying on the business before mentioned in the same vicinity and took the lease of the store for the purpose and with the intention of continuing such business therein, and that he was unable, in the exercise of due diligence, to find another store suitable for his business, was competent and should have been received. Further, after the plaintiff makes a *prima facie* case entitling him to recover for damages to his business, proof should be received, under the pleadings, to show the value of such business.

We agree with Mr. Justice PAINE, in *Shepard v. Milwaukee G. L. Co.* 15 Wis. 318, that to ascertain the value of a business an inquiry as to the profits thereof is necessary.

Probably *value* and *net profits* are convertible terms as applied to a business. Yet the law in many cases gives damages for breaches of contracts, based on prospective profits, when they are fairly within the contemplation of the parties, are not too remote and conjectural, and are susceptible of being ascertained with reasonable certainty. If the plaintiff shows himself entitled to recover for damages to his business, the character, extent, and value of his established business when the lease was executed and before, will furnish a guide to the jury in assessing the prospective and probable value thereof had the plaintiff been permitted to transfer it to the store No. 411 Broadway. Carried on in the immediate vicinity of the old stand, and by the same person, presumably the business would have been equally prosperous. This presumption may be rebutted by proof of facts and circumstances tending to show that the business would probably have been less remunerative had it been so continued.

It was said in argument that no case can be found which gives damages for the loss of anticipated profits, because a landlord fails to give possession at the time agreed upon. This is scarcely a correct statement. The case of *Ward v. Smith*, 11 Price, 19, cited by Mr. Justice PAINE in *Shepard v. Milwaukee G. L. Co. supra*, seems to be just such a case. It is conceded that if the plaintiff had not a business already built up and established in the same vicinity, which, with its good-will, could have been transferred to the store No. 411 Broadway, there would be no basis upon which to estimate the prospective value of the business which the plaintiff would have done there had he obtained possession and carried on the business therein. In such case, profits would probably be too conjectural and uncertain to be the basis of a recovery. Some of the cases refer to this distinction. In *Chapman v. Kirby*, 49 Ill. 211, the court, in speaking of the case of *Green v. Williams*, 45 Ill. 206, say:

" In that case the lessee had not entered upon the term, had not built up or established a business, and had not suffered such a loss.   There was not in that case any basis upon which to determine whether there ever would be any profits, or upon which to estimate them."   In the present case the offer was to prove facts which would have shown a sufficient basis to determine whether there would be profits, and upon which they might be estimated.

For the errors above indicated, the judgment of the circuit court must be reversed, and the cause will be remanded for a new trial.

*By the Court.*— It is so ordered.