Landauer and others vs. Espenhain and others.

───────────

LANDAUER and others, Appellants, vs. ESPENHAIN and others, Respondents.

95    169
111    1 72

*January 13 — February 2, 1897.*

*Attachment: Evidence of fraud: Parties:* Res adjudicata.

1. Under the rule of our statute that every action must be prosecuted in the name of the real party in interest, the payee of promissory notes who has transferred the same cannot maintain an action or an attachment for the debt so long as the notes remain in the hands of his assignee, even though, in transferring them, he in-dorsed them; but in that case, if he afterward pays and takes them up he is remitted to his original rights.

2. If the notes when taken were voidable for the fraud of the maker, and the assignee in taking them relied upon the credit of the in-

dorsement, that could not operate as a reservation of any legal interest in the assignor, and he could not lawfully do anything to impair their value in the hands of the assignee, as by electing to declare them void.

3. In an attachment suit, evidence that the maker of the notes sued on absconded two months after they were made, taking with him a large amount of property and money, and, though having in his possession property largely in excess of his debts, left too little to satisfy all of his creditors, does not establish that he was insolvent when he departed, and much less that he was so when he gave the notes; nor that he then intended to abscond and not pay them.

4. A judgment in favor of plaintiffs in an action upon notes which they had previously transferred to a bank is not conclusive that they owned the cause of action at the time of the recovery or that it was due at the commencement of the action, as against other creditors of the maker who were not parties nor privies to the action, and does not bar them from asserting their rights to precedence.

APPEAL from a judgment of the superior court of Milwaukee county: R. G. SIEBECKER, Judge. *Reversed.*

The plaintiffs are the members of several trading copartnerships, which are creditors of one F. Steinkirchner, who was at one time a trader in Milwaukee. The defendants *Espenhain* and *Bartels* are also creditors of Steinkirchner. The defendant *Burnham* was the sheriff of Milwaukee county. Steinkirchner absconded May 14, 1889, taking with him a large amount of property or money. The defendants *Espenhain* and *Bartels* commenced an action against Steinkirchner on the 15th day of May, 1889, for the recovery of $2,200, claimed to be due them for merchandise sold to him, and attached his stock of goods, which were of the value of upward of $7,000. The plaintiffs, as several copartnerships, also commenced their several actions on their several claims, and levied attachments upon the same goods, subsequently to the levy of the defendants' attachment. They then attacked the defendants' attachment, by intervening petitions, by which they claimed that the defendants were not *bona*

*fide,* or at all, creditors of Steinkirchner, but had taken time notes for their claim, upon which this attachment was based, and had transferred the notes to the Merchants' Exchange Bank, and so had no claim against the common debtor.

The facts were that the defendants had sold goods and merchandise, to a large amount, to Steinkirchner, and had taken his time notes for the indebtedness, and had transferred the notes to the Merchants' Exchange Bank, in payment of their indebtedness to the bank. The notes were owned by the bank, and none of them were due at the time when the action was commenced and the attachment issued:

Yet the affidavit upon which the defendants' attachment had been issued stated that Steinkirchner "is indebted to the plaintiffs in the sum of $2,200, and that the same is due upon express contract." The ground stated for attachment is that the defendant "has assigned . . . and is about to assign . . . his property, with intent to hinder, delay, and defraud his creditors." The ground of the plaintiffs' intervention was that the defendants did not own the claim upon which this action and the attachment were based, having sold it to the bank, and that it was not then payable. To meet this contention, the defendants presented the affidavit of the defendant *Bartels,* which stated that he (the affiant) had personal knowledge of the matters stated, and that the notes which had been transferred to the bank had been given on a consideration entirely different from and independent of the indebtedness on which the attachment had been issued, and that the notes included no part of such indebtedness, but that the attachment was based upon an indebtedness for other goods sold, for the amount of the claim of $2,200, for which no notes had been given.

Upon this showing, the court denied the plaintiffs' application. On appeal to this court it was held that such denial was not an abuse of the discretion of the court. 74 Wis. 379. This action was then commenced by the plaint-

iffs for the purpose of having their attachments made liens upon the attached goods, prior to the lien of the defendants' attachment. The attached goods were sold by the sheriff, and realized the sum of $7,727, a part of which has been paid into court, to abide the result of this action. Five years after the commencement of their action, in December, 1894, the defendants entered judgment in their attachment suit, for the very indebtedness which had been included in the promissory notes, and no other. After the maturity of the notes, the defendants had paid them to the bank, and received them back. The notes were surrendered and canceled at the time of the entry of judgment.

This is the substance of the facts established by the evidence given upon the trial of this action. The trial court found, as conclusions of fact, "that said notes were given by said Steinkirchner while insolvent, without any intention of paying the same, and while contemplating absconding from the state, and fraudulently, and did not operate either as a payment of said indebtedness, or to secure a valid extension of the time of the payment of said indebtedness," and that "the notes were so discounted by the bank solely on the faith of the indorsement thereof by *Espenhain* and *Bartels*," and dismissed the action. There is no direct evidence to prove either of the facts so found, except as they are inferred from the facts that, after Steinkirchner absconded, his creditors failed to find sufficient property to satisfy all their claims, and that the defendants paid the notes to the bank, and received them back. The plaintiffs duly excepted to the findings, and bring this appeal.

For the appellants there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas*, and oral argument by *E. P. Vilas*.

For the respondents there was a brief by *Quarles, Spence & Quarles*, and oral argument by *T. W. Spence*.

NEWMAN, J.   In this state every action must be prosecuted in the name of the real party in interest.   R. S. sec. 2605. The real party in interest is the party who has the right to receive and control the recovery.   The statute is imperative.   Even though the vendor of a promissory note may retain some residuary, contingent, or equitable interest in the note, he cannot maintain an action upon it. ` Pomeroy, Code Rem. (3d ed.), § 135; *Gates v. N. P. R. Co.* 64 Wis. 64; *Cummings v. Morris*, 25 N. Y. 625.   The defense that the plaintiff is not the real party in interest is, in general, an absolute bar to the action.   A party without right to prosecute the action cannot maintain an attachment.   That remedy is ancillary, merely, to the action.   So, the defendants could maintain neither their action nor the attachment, unless they owned the indebtedness which was the cause of action, at the time of the commencement of their action. No doubt the law is that the taking of the vendee's promissory note by the vendor of chattels is not an absolute payment for the chattels, in the absence of an agreement to that effect.   But the taking of the note operates as a conditional payment.   If the note is transferred, so long as it remains in the hands of the assignee it operates as an absolute payment of the original consideration.   If the creditor who takes such securities is charged as indorser and takes them up, he is then remitted to his original rights.   The suspended right of action, upon the original consideration, revives in him, and he may bring his action upon such original consideration, or upon such securities, at his election. *Battle v. Coit*, 26 N. Y. 404, and cases cited; *Meridan S. M. L. Co. v. Guy*, 40 Conn. 163.

If the notes taken by the defendants from Steinkirchner were voidable by them for the fraud of Steinkirchner, as found by the trial court, it would then become a serious question whether the defendants bore such a relation to the

Landauer and others vs. Espenhain and others.

notes as would entitle them to make the election to hold
them void.   They had parted with their title to them, and
they were then the property of the bank.   They certainly
could do nothing, lawfully, to impair the value of the notes
in the hands of the bank, even if the bank did take them
relying on the credit of their indorsement.   That fact could
not operate as a  reservation of an interest, in a legal sense,
in the notes.   They were the absolute property of the bank,
to be disposed of at its will, and were  not, to any extent,
under the dominion of the defendants.   The transaction by
which the bank obtained the notes was a  purchase, in the
usual course of business.

   But the evidence which goes to prove the fraud found
by the trial court is, at the best, but meager and unsatisfac-
tory.   It seems to consist exclusively in the fact that Stein-
kirchner  absconded, taking with him a  large amount of
property or money, and leaving  too little to satisfy all his
creditors.   At the time of his disappearance, he left many
debts, and had an amount of property larger than his debts
by a considerable margin.   The property attached by cred-
itors was sold by the sheriff for $7,727, and the court finds
that he took with him "about $18,000."   This does not es-
tablish very clearly that he was insolvent at the time of his
departure.   It does not show that he could not have contin-
ued his business, and paid his debts in the usual course of his
business.   It does not appear that creditors were pressing
him.   Much less does this prove that he was insolvent a
month or two months earlier, when he gave the notes.   Of
course, his disappearance and withdrawal of his property,
clandestinely, from the power of the process of his creditors,
is a conclusive impeachment of his business integrity, but,
as a proof of his insolvency at a previous date, it is far from
conclusive.   Nor is the evidence which is held to prove that,
at the time when he gave the notes, he intended not to pay

them, any more satisfactory. Apparently he was solvent at the time when he gave the notes. There is no evidence tending to show that he then meditated such a final wind-up of his business: He continued the business for some two or three months later. There is really no evidence that, at the time when he gave the notes, he intended other than to pursue his business. It is more probable that his resolution to abscond was of later origin. But, at best, it all rests in mere surmise, without basis upon any facts other than that he disappeared, taking property with him.

It seems to be claimed upon the part of the defendants that the judgment which the defendants entered against Steinkirchner, in their action against him, is conclusive upon the plaintiffs that they owned the cause of action upon which they recovered, and that it was *due* at the time of the commencement of their action. No doubt that judgment is conclusive upon the parties to the action and their privies. It binds no others. As a rule, a judgment is not admissible in evidence, either for or against a stranger to the action. 12 Am. & Eng. Ency. of Law, 84, and cases cited in note 4. The judgment has no relevancy in this action, either by way of estoppel or as evidence. All these questions could properly be inquired into in this action. *Sexton v. Rhames,* 13 Wis. 99. It was a competition for precedence among creditors. Each one had the right to avail himself of such technical advantage as the actual situation offered him, and each might be fairly required to stand within his own right. None but those who were actual creditors, in legal contemplation, at the time, had a right to compete. The one who has the best legal right is to be preferred and advanced. It cannot well be doubted that, but for the false and misleading affidavit of *Bartels,* the plaintiffs would have secured the precedence sought by their intervention. They ought in this action to obtain the ad-

vantage of which they were defeated by that deception. That was not permissible strategy.

*By the Court.*— The judgment of the superior court of Milwaukee county is reversed, and the cause remanded with direction to render judgment for the appellants for the relief demanded in the complaint.