Gross, Appellant, vs. Heckert, Respondent.

*December 16, 1903—January 12, 1904.*

*Landlord and tenant: Absolute assignment of lease as security: Parol evidence: "Real party in interest:" Failure to deliver possession: Knowledge of lessee's intentions: Damages: Statute of frauds: Value: Sale as evidence: Advance payment to employee: Delay in making sale: Storage and care: Value of term.*

1. It is competent to show by parol evidence that an assignment of a lease, absolute on its face, was given as security only.

2. In an action to recover damages for breach of a lease, it appeared that the lessee had assigned the lease, in form absolutely, to secure an obligation which never ripened into an indebtedness due or to become due, and which had been wholly extinguished before the commencement of the action. *Held*, that the lessee was the real party in interest and could maintain the action in his own name.

3. The damages recoverable for breach of contract are such as may fairly and reasonably be considered the natural and proximate result thereof, and in the light of circumstances, special or otherwise, known to both parties at the time of making the contract, may reasonably be supposed to have been in contemplation by them as the probable result of such breach.

4. Where a lease is made covering in whole or in part an outstanding term, the circumstances being such that the lessor knows or ought to know that his lessee will not be able to enjoy such term according to the agreement, the lessor is deemed guilty of a wrong of a fraudulent character, rendering him liable not merely for the rent which has been paid in advance, with interest, but also for special damages under the rule therefor applicable to ordinary contracts.

5. A contract to sell an article, which contemplates that the vendor shall first manufacture or produce it by the use of labor and capital, is not within the statute of frauds (sec. 2308, Stats. 1898).

6. In an action to recover damages for breach of a lease of a store building, it appeared that at the time the lease was made the lessor knew that the lessee intended to use the premises for saloon purposes and proposed to prepare therefor prior to the commencement of the term. *Held*, that the plaintiff might recover the difference between the cost of saloon fixtures, appliances, and liquors which he had ordered for use in the de-

mised building and their market value in cash at the time of the breach, with interest from such time.

7. In such case, the value at the time of the breach may be established by evidence of a sale made within a reasonable time after the breach and in a manner reasonably calculated to produce the fair market value; but in the absence of such a sale the value may be established by other competent evidence.

8. In such case, evidence that the lessee paid a certain sum for a release from liability on a contract for the purchase of a stock of liquors, which were never delivered, does not establish that the market value of the liquors at the time of the breach was the difference between the contract price and the amount so paid for such release.

9. In such case, an advance payment made by the lessee to a person engaged by him to aid in conducting the saloon business is not a proper element of damages in an action for breach of the lease.

10. In such case, a sale of the property purchased by the lessee eight months after the breach of the lease is *held* too remote to be reasonable, in the absence of some explanation, and some evidence that the property at that late date would probably have brought substantially the price which might have been obtained at or about the time of the breach.

11. In such case, no allowance for storage or care of the property purchased by the lessee should be made him in assessing his damages for breach of the lease except as a part of the legitimate expenses of a sale made to create evidence of value.

12. In such case, the lessee would be entitled to recover as an element of damages any excess in the value of the term over the agreed rent, but evidence that the premises were exceptionally valuable for saloon purposes, and that the prior tenant had made a profit of $2,000 per year in that business, is *held* too uncertain to warrant an award on that ground.

APPEAL from a judgment of the circuit court for Outagamie county: JOHN GOODLAND, Circuit Judge. *Reversed.*

Action for damages for breach of contract. Plaintiff claimed that on February 6, 1901, defendant in writing leased to him a two-story brick building and its appurtenances in the city of Appleton for the purposes of a saloon, the term of the lease being five years from April 1, 1901, with an option for an additional term of five years, the rent charge being $75 per month payable in advance on the first

day of each month; that in and by said lease defendant agreed to put plaintiff in possession of the leased property April 1, 1901; that defendant knew at the date of the lease that plaintiff intended to keep a saloon on the premises and to prepare therefor prior to April 1, 1901, by purchasing furniture, fixtures, and other articles necessary for such business; that relying upon obtaining possession of the premises pursuant to such lease plaintiff spent much time and money making such preparations. The rental value of the premises for the term of five years was $2,000. Plaintiff fully performed the conditions of the lease on his part. Defendant failed to do so. He did not deliver possession of such premises to plaintiff April 1, 1901. At the time of the making of such lease they were occupied by a lessee who continued in possession, under contract with defendant, for several months after the commencement of the plaintiff's term. They were specially valuable for the purposes for which plaintiff leased the same. He suffered damages by reason of defendant's breach of agreement, to the amount of $6,500 in the whole, for which sum judgment was demanded with costs.

The answer admitted the execution of the lease, but denied that defendant had knowledge at the date thereof that plaintiff purposed using the premises for a saloon business. The allegations of the complaint in respect to damages were put in issue, and it was alleged that the action was not brought by the real party in interest in that, before the commencement thereof, the lease was assigned by plaintiff to the S. C. Herbst Importing Company.

The cause was referred to F. S. Bradford to hear, try and determine. Upon the trial there was evidence establishing or tending to establish the following facts: Soon after the lease was made it was assigned to the S. C. Herbst Importing Company mentioned in the answer, solely as security. The defendant had knowledge at the time the lease was made that plaintiff purposed using the premises for a saloon and to pre-

pare therefor before the commencement of his term. The premises were more than ordinarily valuable for a saloon business. In the course of plaintiff's preparations for occupying the leased premises he contracted for and incurred liabilities as follows: For saloon fixtures, $917; matting, $150; glassware of various kinds, $386.99; gas fixtures, $136; liquors, $1,623.15. By reason of defendant's failure to deliver possession of the leased premises as agreed, plaintiff was unable to use the property so contracted for. The saloon fixtures were not suitable for any other premises. The value of such fixtures to plaintiff under the circumstances, was $650. Plaintiff never took the matting, though it was made specially for him. It was not salable to any other person at any price. Plaintiff partially paid for the glassware, and became bound to pay the balance of the indebtedness therefor. The market value thereof for a resale would not exceed sixty per cent. of the cost to plaintiff. The value of the gas fixtures on a resale would not exceed $25. Plaintiff made a payment upon the indebtedness for liquors. Upon finding that he could not get possession of the saloon building as agreed, he obtained a release of his obligation to take the liquors by paying $162.85 to the vendor. There was no evidence of the market value of the liquors. Plaintiff hired a person to assist him in the saloon business, in anticipation of enjoying his lease. He paid such person $50 in advance. He incurred other expenses in small amounts. Upon finding that he would be unable to obtain possession of the premises he advertised the saloon fixtures for sale at auction, incurring an expense of $24.54 in so doing. He was prevented from making such sale by the conduct of the defendant. There was evidence as to the leased premises being specially valuable for the saloon business, but none as to whether plaintiff could have obtained other premises for his contemplated business.

The referee found as facts, in addition to the undisputed matters which cover the making of the lease and the failure

of the defendant to put plaintiff in possession of the leased premises, and that such premises were specially valuable for a saloon business, the following: January 1, 1900, plaintiff agreed with the S. C. Herbst Importing Company that they should furnish him liquors to the amount of $1,623.15. None of the goods were delivered. After May 1, 1901, plaintiff agreed to give the company $162.85 as damages for failure on his part to take the goods. Prior to April 1, 1901, plaintiff ordered 150 yards of rubber matting, agreeing to pay $150 therefor. He did not pay anything upon such order. The goods were never delivered. The agreement for the goods was not in writing, nor was there any memorandum thereof. March 15, 1901, plaintiff purchased electrical and gas fixtures at $136. The value thereof on May 1st, and at the time of the commencement of the action was $90. He made a conditional purchase of saloon fixtures at $917, paying $150 thereon. He did not carry out the terms of the conditional sale, nor take the goods. The value thereof on May 1st and at the time of the commencement of the action was $815. He made an agreement with John Elsner, a bartender, to work for him after April 1, 1901, paying him $50 in advance. He purchased glassware to the amount of $386.99, paying $100 on account thereof. The goods were never delivered. At the commencement of the action they were worth $367.66. Plaintiff incurred expenses in various small amounts, preparing for the saloon business, aggregating $50. His prospective profits were six cents. He was unable to obtain possession of the leased premises April 1, 1901, because they were occupied by a tenant. When the lease was made defendant expected to be able to deliver the premises to plaintiff as agreed. Defendant did not get possession thereof till September 15, 1901. Plaintiff demanded possession of the premises April 1, 1901, but defendant was unable to deliver the same. About May 1, 1901, plaintiff informed defendant that he could not longer wait and must be made good in

damages for defendant's breach. Plaintiff paid defendant $10 on the lease as rent, which was returned. The value of the leased premises was not more than the rent reserved. February 18, 1901, the S. C. Herbst Importing Company guaranteed in writing the payment of the rent. On that day the lease was assigned, transferred and set over to said company. The assignment was absolute in form.

As conclusions of law the referee found that plaintiff was not the real party in interest and that the complaint should be dismissed with costs. Such findings and conclusions were confirmed by the circuit court, proper exceptions being filed to raise the questions discussed in the opinion.

Plaintiff appealed.

*Glenway Maxon,* for the appellant.

For the respondent there was a brief by *Henry D. Ryan* and *J. E. Lehr,* and oral argument by *Mr. Lehr.*

MARSHALL, J. We are unable to discover any warrant in the evidence for the decision that plaintiff, before the commencement of this action and the happening of the events upon which his claim for damages is based, assigned his lease to the S. C. Herbst Importing Company, incapacitating himself from bringing such action for want of being the real party in interest. The evidence is clear that the assignment, if one was effected, though absolute in form, was for security only. It seems that it must have been supposed in the court below, either that it was not competent to show by parol evidence the real nature of the assignment, or that a mere mortgaging of the leasehold interest rendered the mortgagee the real party in interest to prosecute for a breach on the part of the lessor. The law is so clearly the other way as to both propositions that it seems unnecessary to spend time discussing the matter at any great length. As to the first proposition the following decisions of this court are decisive: *Butler v. Butler,* 46 Wis. 430, 1 N. W. 70; *Rockwell*

*v. Humphrey,* 57 Wis. 410, 15 N. W. 394; *Manufacturers' Bank v. Rugee,* 59 Wis. 221, 18 N. W. 251; *Lamson v. Moffat,* 61 Wis. 153, 21 N. W. 62; *First Nat. Bank v. Damm,* 63 Wis. 249, 23 N. W. 497; *McCormick v. Herndon,* 86 Wis. 449, 56 N. W. 1097; *Bertschy v. Bank of Sheboygan,* 89 Wis. 473, 61 N. W. 1115; *Jourdain v. Fox,* 90 Wis. 99, 62 N. W. 936. As to the second point the following decisions are likewise clear: *Landauer v. Espenhain,* 95 Wis. 169, 70 N. W. 287; *Chase v. Dodge,* 111 Wis. 70, 86 N. W. 548. The test of whether one is the real party in interest within the meaning of the statute is, Does he satisfy the call for the person who has the right to control and receive the fruits of the litigation? The rule is stated in a recent ably written work thus:

"The real party in interest, within the meaning of this provision of the code, is the person who will be entitled to the benefits of the action if successful; one who is actually and substantially interested in the subject-matter, as distinguished from one who has only a nominal, formal, or technical interest in or connection with it." 15 Ency. Pl. & Pr. 710.

A mere mortgagee of an interest in realty, which, at the best for respondent, was the situation of the assignee of the lease, possesses only a lien to the extent of the obligation secured by the mortgage. Independently of such obligation it constitutes no interest whatever in the thing mortgaged. The extinguishment of the obligation, without any other act, whatever *ipso facto* extinguishes the lien. *Brinkman v. Jones,* 44 Wis. 498; *Fred Miller B. Co. v. Manasse,* 99 Wis. 99, 74 N. W. 539. The evidence in this case shows that the obligation to secure which the assignment of the lease in question was made, if one was in fact effected, never ripened into an indebtedness due or to become due, and that it was wholly extinguished before the commencement of this action, thereby leaving the plaintiff not only the real party in interest to

prosecute the cause of action in suit, but the sole party interested therein.

As appears by the statement of facts, the referee neglected to find on the subject of respondent's knowledge that appellant intended to use the leased premises for a saloon business, and to prepare therefor so as to be able to commence such business at the beginning of his term. That was a matter in issue on the pleadings and was an important feature of appellant's case as bearing on the damages recoverable of the respondent, under the rule in *Hadley v. Baxendale,* 9 Exch. 341, which has been often approved in this court, and applied, as will be seen, to the particular class of cases to which the one before us belongs. Such rule may be stated as follows: The damages recoverable for breach of contract are such as may fairly and reasonably be considered the natural and proximate result thereof, and in the light of circumstances, special or otherwise, known to both parties at the time of making the contract, may reasonably be supposed to have been in contemplation by them as the probable result of such breach. The number of cases here, where that has been applied is very large. The following are a few of them: *Shepard v. Milwaukee G. L. Co.* 15 Wis. 318; *Hibbard v. W. U. Tel. Co.* 33 Wis. 558; *Candee v. W. U. Tel. Co.* 34 Wis. 471; *Hammer v. Schoenfelder,* 47 Wis. 455, 2 N. W. 1129; *McNamara v. Clintonville,* 62 Wis. 207, 22 N. W. 472. The rule is usually stated omitting the feature as to special circumstances, as the cases where that is important are exceptional. The following are in the exceptional class: *Cockburn v. Ashland L. Co.* 54 Wis. 619, 12 N. W. 49; *Guetzkow Bros. Co. v. A. H. Andrews & Co.* 92 Wis. 214, 66 N. W. 119. That it applies where, as in a case like this, a lease is made covering in whole or in part an outstanding term, the circumstances being such that the lessor knowns or ought to know that his lessee will not be able to enjoy such term according to the agreement, is held in *Poposkey v.*

*Munkwitz,* 68 Wis. 322, 331, 32 N. W. 35, to which appellant's counsel refers and upon which he confidently relies. As there shown, ordinarily the rule of damages for failure of title to a leasehold term is the same as for such failure as to an absolute conveyance of realty with warranty. The amount recoverable is confined to the consideration, with interest. If rent has been paid to apply upon any portion of the term which the lessee is prevented from enjoying, that may be recovered with legal interest. If no sum has been so paid, the damages are deemed to be nominal only. The exceptional circumstance referred to, of the lessor being chargeable with knowledge at the time of making the lease that his lessee will not be able to take possession of the leased premises and enjoy his term according to agreement is deemed to render him guilty of a greater wrong than that of a mere breach of contract to assure the lessee in the quiet enjoyment of the leased premises. He is deemed to be guilty of a wrong of a fraudulent character and amenable to damages under the general rule applicable to contracts.

The evidence was substantially undisputed and conclusive that when the lease was made respondent knew the use the premises were to be devoted to and that appellant purposed preparing, prior to the commencement of his term, for the enjoyment thereof. There should consequently have been a finding accordingly, and appellant should have been given the benefit of the state of the case thus shown to exist in considering the evidence and making findings as to damages caused by the breach complained of. The errors in not doing so are here for correction, appellant having specially requested proper findings on the subject and saved exceptions to the refusal to make them.

Appellant requested a finding to the effect that, relying upon the agreement to put him in possession of the leased premises, he incurred obligations and paid out money in anticipation of enjoying his term, which was largely lost by

reason of respondent's failure to enable him to do so. The evidence was undisputed in regard to that matter. That error was committed in refusing to make the findings requested follows necessarily from what has been said.

According to the evidence, one of the obligations incurred by appellant as stated in the foregoing paragraph is $917 for saloon fixtures, which, by reason of the breach, were not worth to him, at the time thereof, to exceed $650, and he thereby suffered a loss of $267. The finding that the value of the fixtures at the time of the commencement of the suit was $815 seems not to be based upon any evidence in the case, and to have been made without appreciating the fact that the true measure of appellant's damages in respect to the matter was the difference between the contract price for the property and the market price thereof in cash at the time of the breach, with interest from such time. Upon just what theory the finding of $815 was made we are unable to discover. The error assigned in respect thereto is sustained.

The item of $150 damages claimed by appellant on account of matting, which the undisputed evidence shows became worthless on his hands because of the breach complained of, seems to have been rejected upon the theory that the contract for the property was not enforceable by reason of sec. 2308, Stats. 1898, since it was wholly verbal and executory, and nothing was paid thereon, nor was any part of the property ever delivered. That statute relates only to executory sales of property; not to contracts for the manufacture and sale of property. *Meincke v. Falk,* 55 Wis. 427, 13 N. W. 545; *Boyington v. Sweeney,* 77 Wis. 55, 58, 45 N. W. 938; *Goodland v. LeClair,* 78 Wis. 176, 178, 47 N. W. 268. The distinction between a contract of sale where there is nothing for the seller to do but to tender the property, and a contract requiring the executory vendor to manufacture or produce the article by the use of his capital and labor and then tender the same, the former being within and the latter without the

statute, is clearly shown in *Meincke v. Falk, supra.* It is easily seen that a mere contract of sale, contemplating thereafter only a tender of the subject thereof upon the one side and payment of the consideration therefor upon the other, is quite different from such as the contract here. That the statute deals with the former only is clear from the fact that by its terms it plainly indicates that a part execution of the contract by one party, accepted by the other, takes it out of the statute. A contract to sell an article which contemplates that the vendor shall first manufacture it by the use of labor and capital implies that the application of such labor and capital in the execution of the agreement is to be accepted as the work of manufacture progresses, contingent upon the thing, when produced, corresponding to that ordered. The result is that, as soon as the process of manufacture commences the contract is no longer wholly executory. When the article contracted for is ready for delivery and the situation is such that it might then form the subject of a sale within the meaning of the statute, the real contract has been substantially performed upon one side. To allow the statute of frauds to then interfere with the final consummation of the agreement would be a use thereof to perpetrate fraud instead of to prevent fraud. That is not allowable. There should have been a finding to the effect that appellant was damaged by the breach complained of, on account of loss on the matting, in the sum of $150 and interest.

Appellant complains because of the finding that the gas and electrical fixtures—costing $136 and by reason of respondent's fault left of no account to him except what he could obtain therefor at a resale—were worth $90; and that the glassware, costing $398.99 and by respondent's fault left in the same situation, was reasonably worth to appellant $367.66. Such complaint seems to be fully warranted. The finding appears to have been made quite independently of the evidence or the correct rule of law applicable to the subject. As

before indicated, the measure of appellant's damages as to such matters was the difference between the cost price of the goods and the amount which, under the circumstances, the same were reasonably worth at the time of the breach. Had appellant resold the property in a way reasonably calculated to produce the fair market value thereof, the amount thus obtained would have been evidence of such value; and had a sale been made in a way reasonably calculated to produce the best price obtainable, the net result would have been binding upon respondent as the true value. *Pratt v. S. Freeman & Sons Mfg. Co.* 115 Wis. 648, 92 N. W. 368; *T. B. Scott L. Co. v. Hafner-Lothman Mfg. Co.* 91 Wis. 667, 65 N. W. 513. Not having so established the fair market value of the property at the time of the breach, it was necessary to do so by other competent evidence. Evidence was produced in that regard, and, looking at the same as favorably as we reasonably can for respondent, the damages suffered by appellant as to the electrical and gas fixtures was $111, and as to the glassware, $154.80. A finding to that effect should have been made.

Complaint is made because of there being no finding as to damages suffered by appellant on the stock of liquors for which he incurred a liability of $1,623.15 and paid $162.85 for a release therefrom. It is sufficient to say on that subject that appellant wholly failed to produce any evidence as to the market value of the goods at the time of the breach; hence there was no opportunity for a finding to be made in respect to the matter, based upon the rule of damages applicable thereto. It is quite likely that if the settlement between appellant and his vendor, whereby a sum of money was paid to the latter for a release of the former from his indebtedness, were regarded as establishing the difference between the amount of such indebtedness and the value of the property involved at the time of the breach, it would be as favorable to respondent as if such value were established by competent

evidence. But the evidence of the settlement does not constitute legal proof of the essential fact; therefore the claim for damages on this branch of the case wholly fails. For aught the record shows the stock of liquors at the time of respondent's breach may have been worth much more than the purchase price thereof.

Further complaint is made because only $50 in the aggregate was found to have been paid out by appellant in addition to expenditures for merchandise during the course of his preparations to occupy the leased premises. In support of that, reference is made particularly to the circumstance that appellant made an advanced payment of $50 to a person engaged by him to aid in conducting the saloon business. Since only such damages are recoverable as under all the circumstances both parties at the time of entering into the contract may reasonably be presumed to have anticipated would in the natural course of things probably result from a breach thereof, it is difficult to see how a loan of money, so to speak, in anticipation of the borrower repaying the same by the performance of labor, as in this case, can be recovered because such payment was prevented. The purchase by appellant of furniture and stock for use in running the saloon business, in anticipation of enjoying the leased premises, respondent should have reasonably expected would occur under the circumstances; but not the hiring of assistants and the payment to them of wages in advance. The former would and the latter would not be circumstances happening according to the natural course of things within the rule above stated. The advance of wages being thus not recoverable, we are unable to reach a conclusion that the finding of the court under consideration is contrary to the clear preponderance of the evidence.

There was evidence to the effect that appellant paid $60 for storing and caring for the saloon fixtures during some eight months subsequent to the breach complained of, and

$24.50 in attempting to make an auction sale thereof November 25, 1901, with the other property purchased for use in the saloon business, which sale he was prevented from making by reason of interference on the part of respondent, in that the latter served a notice on the auctioneer to the effect that if he proceeded with the sale as contemplated he would incur pecuniary responsibility, as the property was involved in litigation and the title thereto in dispute. Error is assigned because no findings were made to the effect that appellant suffered recoverable damages in respect to such matters to the amount of the expenditures mentioned. The sole legitimate purpose of the proposed sale was to create evidence of the market value of the goods at the time of the breach complained of. The result of the sale, had one been made under circumstances fairly calculated by the result to indicate such value, would have been competent evidence thereof. One of the important requisites of such circumstances was such proximity of the time of the sale to that of the breach as to render the result not likely to be unfavorably influenced by conditions occurring subsequent to such breach. 2 Mechem, Sales § 1642. Counsel's theory in insisting upon allowance of expenditures in preparing for the auction sale, we assume, is that appellant had a right to create evidence in his behalf in the manner attempted; that up to the time of the wrongful interference, rendering his effort in that regard ineffective, all requisites were satisfied to cause such efforts to produce legitimate evidence; that the value of the property thus shown would have been the sum received upon the sale less the expenses incurred, thus making good to him such outlay; and that he should not, therefore, be prejudiced as to such expense by respondent's conduct. Whether mere fruitless expenditure of money by one party in an effort to obtain evidence on the subject of damages in a case like this, though the barrenness of the result be produced by his adversary, is a proper element of damages recoverable in the

action, is by no means free from doubt. We need not, however, solve it here, since we are unable to hold that if the proposed sale had taken place the result would have constituted legitimate evidence in the case. The time the sale was to take place was too remote from the date of the breach to be deemed reasonable in the absence of some explanation thereof and some evidence that the property at the late date would probably have brought substantially the price obtainable at or about the time of the breach. For that reason, if for no other, it is considered that no error was committed in not finding in appellant's favor as to the expenses of the proposed sale. The same reason condemns the claim for $60 for storing and caring for the saloon fixtures. Since the difference between the value of the property at the time of the breach and the purchase price thereof, with interest upon such difference from such time, is the limit of legal damages, no allowance for storing and caring for the property could be awarded except as part of the legitimate expenses of a sale made to create evidence of such value.

Error is assigned on the failure to find that the value of appellant's term exceeded the rent reserved therefor, and to award him damages for the excess. Since, as we have seen, because of respondent's wrong in assuring appellant a term which he should have known he could not make good as agreed, he is liable for full damages under the rule we have stated, that necessarily includes any excess in the value of the term over the cost agreed upon, so far as warranted by evidence, enabling the court to measure it with some reasonable degree of certainty; and the same should have been found and awarded to appellant. The difficulty of appellant's position in respect to the matter, however, is that there does not seem to be any evidence upon which the court below could properly have acted in his favor. There is general evidence as to the leased premises being exceptionally valuable for the business they were leased for, and other evidence

to the effect that the tenant who occupied the premises before the commencement of appellant's term made a profit of $2,000 per year. That may all be true, and yet the value of the use to appellant not have been in excess of the rent reserved, since for aught that appears he could have rented other premises just as valuable in the same locality, and at the same or a less price. *Poposkey v. Munkwitz,* 68 Wis. 322, 32 N. W. 35. Again, the fact that another person made $2,000 per year using the premises for a saloon business is not proof that appellant could have established such a business and conducted it with like success. The personal element in the matter is an important feature. That would be obvious without direct evidence in respect thereto; but such evidence was given and preserved in the record. In a proper case and upon proper evidence, a person damnified by the wrongful conduct of another, preventing such person from making profits in a business enterprise which he otherwise would have made, may recover of such other for his loss; but, as has often been said by this court, the law in that regard is quite liable to operate unjustly and oppressively, and therefore it should be administered with caution and with strict regard to the rules applicable to the establishment of the damages. *Guetzkow Bros. Co. v. A. H. Andrews & Co.* 92 Wis. 214, 66 N. W. 119; *Wright v. Mulvaney,* 78 Wis. 89, 46 N. W. 1045; *Pewaukee M. Co. v. Howitt,* 86 Wis. 270, 56 N. W. 784; *Bierbach v. Goodyear R. Co.* 54 Wis. 208, 11 N. W. 514; *Anderson v. Sloane,* 72 Wis. 566, 40 N. W. 214. So it is held that prospective profits should not be allowed without evidence to base the same on sufficiently certain to remove the result from the realms of pure conjecture. There are many instances where it has been held that past profits of a business constitute a legitimate basis from which to estimate, with sufficient certainty to satisfy judicial requirements, future profits in the same business conducted in substantially the same manner. *Treat v. Hiles,* 81 Wis. 280,

50 N. W. 896, and *Schumaker v. Heinemann,* 99 Wis. 251,. 74 N. W. 785, are instances of that. But there is no authority, we venture to say, to support the proposition that what one person realized for profits in a business conducted in a particular location, such business being of a character dependent largely upon the personal following and qualities of the proprietor, constitutes a legitimate basis upon which to estimate with judicial certainty, so to speak, what another person might make in the same location by engaging in the same business, upon the former removing to a new location, taking with him, so far as practicable, the good will of the old one, as the evidence shows was done in this case. Profits based on such uncertain data would be too speculative by far to be worthy of judicial recognition.

The result of the foregoing is that recoverable damages were shown in this case and should have been properly found in appellant's favor as follows: $267 for loss on the saloon fixtures; $150 for loss on the matting; $154.80 for loss on the glassware; $111 for loss on the gas fixtures, and $50 for expenses; in all $732.80, and interest thereon from the time of the breach, April 1, 1901. Interest is allowable as part of the damages and necessary to fully indemnify appellant for the result of respondent's wrongful conduct. *J. I. Case Plow Works v. Niles & S. Co.* 107 Wis. 9, 82 N. W. 568; *McCall Co. v. Icks,* 107 Wis. 232, 83 N. W. 300.

*By the Court.*—The judgment is reversed, and the cause remanded with directions to render judgment in favor of the appellant in accordance with this opinion.