MUSSEY *versus* CAHOON, WEBB AND CUMMINGS.

In the assessment of damage, done to an individual by the establishment of a city street, which would require a removal of his building, a provision that he should not be required to do it, until necessary for the opening of the street, does not require any special notice to him of the time for the removal.

That time would be sufficiently indicated to him by the progress made in the formation of the street.

One who abuses the authority, vested in him by law for a special purpose, will be treated as having had no authority for any part of his acts.

Thus if an officer, who had authority to remove from the street the building of another person, should after removing it, make sale of a part of its materials, he will be deemed a trespasser *ab initio*, and held chargeable for the whole value of the building.

ON REPORT from *Nisi Prius*, HOWARD, J. presiding.

TRESPASS for tearing down and removing a shop, belonging to the plaintiff and situated at the head of his wharf in Portland.

It was admitted that Cahoon, as Mayor of the city, directed Webb to remove the shop, and that it was taken down and removed by Cummings under Webb's directions. It was proved by the plaintiff, that the shop was worth $300 to remain where it stood, or $250 to be removed; and that some fragments of its materials, after lying eight or ten days upon the wharf, were sold by Webb for $20.

It was shown, in defence, that in March, 1850, the city authorities located and established a street, (upon which they also consented that a railroad should be built,) passing directly under the shop.

The estimate of compensation, assessed for damages done by the location, was based upon a right in the owners to remove the buildings, if done so soon as should be necessary for the opening of the street. On the 7th August, the plaintiff was notified that an immediate removal of his shop was necessary; and he was requested to do it. On the 8th August the laborers having arrived at that part of the track, and being in readiness to drive piles there for the formation of the street, the shop was removed, as before stated.

The case was withdrawn from the jury, and submitted to the Court with power to draw inferences of fact.

*Rand*, for the plaintiff.

*W. P. Fessenden*, for the defendants.

HOWARD, J. — The city council had exclusive authority and power to lay out and alter streets in the city of Portland; "and to estimate the damages any individual may sustain thereby." Special Laws, 1832, chap. 248, sect. 6; Act of 1837, chap. 25.

It is admitted, for the purposes of this trial, that Commercial street, in that city, was duly laid out, in March, 1850; and that the building taken down by the defendants, on Aug. 8, 1850, was standing within the limits of that street. The committee for laying it out, and estimating the damages, used the following language, in their report, — "It being understood, in our estimation of the damages, that the owners of the buildings standing on the line taken for said street as aforesaid, should have the right of removing the same, provided the same is done as soon as said removal is necessary for the purpose of making said street." This report was accepted by the city council. On May 30, 1850, the commissioner of streets, who was Webb, one of the defendants, was authorized and directed, under the advice of the city solicitor, to cause the buildings, vessels, and all other obstructions on Commercial street, to be removed forthwith, " or as soon as it may be necessary for the purpose of making said street, provided the owners neglect or refuse to remove the same."

In the estimation of damages sustained by the plaintiff, the removal of his buildings was left as a privilege for him, if he chose to remove them upon the terms specified in the location. It was not provided, or stipulated, that notice should be given to him, when the removal would be necessary, nor can it, reasonably, be inferred that he was to have other notice, than such as might be derived from the location of the street. He could waive or enjoy the privilege, but could not properly insist upon the right to further notice of the time when he

must move, in order to secure it. He was bound to take notice of this if he would make the privilege available.

The notice of August 7, 1850, would not have been reasonable, if any had been necessary ; and we cannot regard an attempt of the Mayor to give that notice, other than as a gratuitous service to the plaintiff, not authorized by the city council, and not required by law, or by the terms of the location.

As commissioner of streets, and in pursuance of the order of the city council, it was the duty of Webb to cause the building of the plaintiff to be removed at the time when it was done. The evidence is satisfactory, that the removal was then " necessary for the purpose of making the street." Special Laws, 1831, ch. 135 ; Special Laws, 1832, ch. 248, § 1, 4 ; Revised Ordinances of the city of Portland, ch. 2.

The agency of Cummings and Cahoon, the other defendants, appears to have terminated with the removal of the plaintiff's building ; the former acting as servant of the commissioner of streets, and the latter giving directions as the chief executive magistrate of the city. To that time neither of the defendants can be regarded as trespassers, or wrongdoers.

Afterwards, the remains of the building, which was called an " old cooper-shop," was sold by Webb, assuming to act as commissioner of streets, and in behalf of the city. It is conceded that the sale was unauthorized.

When one abuses the authority with which he is invested by law, for a special purpose, he is regarded as having acted throughout the transaction without authority. The law withdraws its protection from him, as to every thing done by its authority thus perverted and abused. While the commissioner of steets was legally authorized and empowered to remove the shop as an obstruction from the street, he had no right to sell, confiscate or destroy it. Selling it in the manner proved, was an abuse of authority conferred by law, which rendered Webb a trespasser *ab initio*, and answerable for the value. *The six Carpenters' cases*, 4 Coke, part 8, 290 ; Bacon's Abridg. Trespass, B. sect. 24 ; *Allen* v. *Crofoot*, 5 Wend. 506 ; *Malcom* v. *Spoor*, 12 Metc. 279.

It does not appear, that Cummings or Cahoon participated in the sale made by Webb; or that they had any information or knowledge of its being made, and they are not implicated or affected by that transaction, as in furtherance, or prosecution of a common design. *Wynne* v. *Anderson & als.* 3 Car. & P. 596; *Adams* v. *Freeman,* 9 Johns. 117. Judgment must therefore be rendered for them, for costs, and against Webb, for the value of the building.