SYLVESTER PETTIBONE and STEPHEN A. HUBBELL
Complainants, Appellees,

*vs.*

JOHN T. PERKINS, Defendant, Appellant.

APPEAL IN EQUITY FROM THE MILWAUKEE CIRCUIT COURT.

It is one of the primary requisites of an award, that it must be in pursuance of the submission.

It must embrace the whole subject matter submitted, as well as the rights of the parties submitting, so far as they are submitted.

An award which is so vague, uncertain, and inexplicit, that it cannot be enforced will be set aside in equity.

At a pulic sale, held by a mortgagee to foreclose the equity of the mortgagor in a chattel mortgage, collusion between the mortgagee and a third person, by which the latter is to bid off the property for the use of the mortgagee, will vitiate the sale.

The bill in this case is long, and, together with the answer, sets forth the relations of the parties in labored detail, and embraces principally matters not relating to the points decided. Extracting from it, however, such parts only as elucidate the issue in this court, it appears that Pettibone and Hubbell, in February, 1850, were partners, engaged in the lumbering business, and owned a saw-mill in the county of Oconto, in this state.

On the 25th day of February, 1850, they entered into a contract of affreightment with appellant, Perkins, by which the latter agreed to employ the schooner Cherubusco in transporting lumber for them, from the mouth of the Oconto river to the city of Milwaukee, during the season of navigation of the year 1850, specifying the terms of the transportation.

That said Hubbell was then a part-owner with said Perkins in the schooner Cherubusco, but was indebted to Perkins on account thereof, and with a view to retain his interest, and have

control of the vessel for carrying purposes in their lumber business, Pettibone & Hubbell, immediately after entering into the freighting contract, bought of Perkins the undivided half of the said schooner for $2,585.16, of which $500 was to be paid in hand, and the balance secured by note, and a chattel mortgage on the half of the vessel; but that while the note remained unpaid, the possession and control of the vessel should continue in Perkins; and that the net earnings should be applied to the payment of the indebtedness of Hubbell to Perkins, and thereafter, the half of the net earnings were to be applied to the payment of the note and chattel mortgage of Pettibone & Hubbell. Which bargains and agreements were evidenced in writings signed by the parties, and copied in the bill; and operations were commenced and continued under and in pursuance thereof, until the 29th of August, 1850, when, the vessel having gone ashore in a storm, at the city of Milwaukee, and a controversy having arisen between said parties, they mutually agreed to submit the same to arbitrators to be chosen by them; and by bonds of submission, bearing date the 14th day of April, 1851, did nominate and appoint E. C. Kellogg, R. K. Caswell and Albert Smith, arbitrators, to determine and award of and concerning the unsettled accounts of the said schooner Cherubusco, and any damage claimed by either party by contracts relating to the running or sailing of said schooner, as by the bond and submission, fully copied into the opinion of the court, will appear.

The arbitrators named in the submission assumed the burthen of the arbitration, and on the 9th day of April, 1851, met and proceeded, from time to time, to hear the proofs and allegations of the parties; and on the 24th day of April, 1851, made out their award in writing, in and by which they awarded and determined, that there was due and unpaid from the schooner Cherubusco the sum of two thousand three hundred and fifty dollars and fifty cents, unto the said Perkins, with interest on the same; and that of this amount Hubbell & Pettibone were personally liable to Perkins for the sum of $1,175.25, with like interest, and that the remaining sum of

$1,175.25, so due Perkins, should be a lien upon said schooner, and upon her earnings, freights, or other increase, first to be paid to said Perkins, independent of all other claims, except ordinary expenses in the use of the same.

The bill sets forth at great length the evidence adduced, and the claims made, before the arbitrators, and the objections urged against the admission of such claims and evidence, as the complainants deemed inadmissible, and the rulings of the arbitrators thereon; but such rulings, and the matters upon which they were founded are not material to the points adjudicated.

It appeared that Perkins kept the vessel in his control and use, after the making of the award, and about the 23d day of July, 1851, he caused the same to be put up for sale at public auction in the city of Milwaukee, by virtue of the said chattel mortgage on the undivided half, at which sale Pettibone bid upon the same the sum of $1500, which was the highest bid made. That Daniel Newhall and said Perkins were present at the sale, and that Newhall bid the sum of $500. Pettibone requested the officer conducting the sale to wait one hour for him to procure the money bid by him, and did return within the hour, prepared to make good his bid, but was informed by the officer that he had sold the vessel to Newhall for $500. It appears from the testimony of Newhall, that after Pettibone had bid the $1,500, he, Newhall, went home, thinking to hear no more from the vessel; that Perkins called on him soon after, saying that Pettibone was not going to raise the money, and they would have to fall back upon his, Newhall's, bid. Newhall then told him that he thought he would not have anything to do with the vessel; and Perkins said to him that if he would let his bid stand, he, Perkins, would take the vessel off his hands. And it was so arranged, and Perkins went over and arranged about the pay, and came back, and Newhall gave him a bill of sale of the interest Newhall had under the bid; but no money whatever passed.

From the time of this pretended sale to Newhall, Perkins continued to have possession and control of the vessel, and received her earnings until the month of October, 1853, when

he sold the vessel to Anson Eldred for $4,400, all of which he applied to his own use, and now claims from complainants the amount awarded against them by said arbitrators, and has commenced an action at law, in the circuit court of Milwaukee county, for the recovery thereof, upon the submission bond.

The bill impeaches the award both for errors in the judgment of the arbitrators in the admission of improper testimony, and on account of the frauds and mal-practices of Perkins in procuring it, and also inasmuch as it does not follow, and conform to, the submission from which the arbitrators derived their authority; and prays an injunction against Perkins' action at law on the submission bond, the equitable adjustment of the accounts between the parties in the premises, and for general relief.

Perkins answers at great length, admitting the main historical features of the case, but denying any and all improper conduct in respect to the award, insists upon the validity of the sale to Newhall, exhibits his several claims against Hubbell, Pettibone & Hubbell, and the Cherubusco, and claims that at the time of the sale of said vessel to Anson Eldred, he was the sole owner thereof, and that he is under no obligation to account to complainants, or either of them for any part of the sum so received, on the earnings of said vessel prior thereto.

The testimony in the case consists of exhibits of the contracts between the parties, and the deposition of Daniel Newhall, which has already been adverted to.

Upon hearing in the court below, a decree was rendered setting aside the award of the arbitrators, for the reason that it was not in pursuance of the submission; and perpetually enjoining the defendant, Perkins, from maintaining any action upon the same or upon the submission bond, as well as upon the promissory note (accompanied by the chattel mortgage,) for $2,085.16, bearing date 4th April, 1850. Also declaring the sale of the vessel to Newhall under the chattel mortgage to be irregular and void; and that Perkins account for one-

half the earnings of the vessel, over and above necessary expenses, and also one-half of the sum of $4,400, received by him on the sale of the vessel to Eldred; and referring the cause to a commissioner for further proofs, an account, &c.

From this decree the defendant, Perkins, appealed to this court.

*J. E. Arnold,* for the complainants, appellees.

I. It is sought to set aside the award for the reasons that the arbitrators made a mistake of law and fact; that the award was not in pursuance of the submission; that the arbitrators exceeded their authority; that they failed to pass upon particular matters particularly submitted; and, for reason of the misconduct of the arbitrators.

1st. In this State the jurisdiction of the court of chancery, in cases of awards, is not narrowed or limited by statute. It is the same as in England previous to the English statutes. 2 Story Eq. Juris., 1450, et. seq.

2d. The award must be in pursuance of the submission. Watson on arbitration and Award, 175, 179; Russell's Arbitrator, 236; *Lee vs. Ornstoll,* 1 Pike, 206; *Stevens vs. Gray,* 2 Harr., 346; 5 Smedes & Marsh, 712; 8 N. H., 82; 6 J. R., 14; 1 Wheat., 446; 15 Ala., 398; 2 Halst., C. R., 450.

3d. It must not extend beyond the submission, either as to subject matter or persons. Watson on Arbitration and Award, 179, 180, 181, 13 J. R., 27; 6 Pick., 269.

4th. It must embrace all the matters submitted, and must specifically determine each matter, when the submission is particular. And if it exceed the subject matter it is void, unless the excess can be separated and rejected without affecting the merits of the submission. Watson, ante; 4 Dallas 285; 3 Yates, 521; 7 Mass., 399; 5 Wheat., 394; 2 Caines, 235; 3 Cow., 70; 5 Id., 197.

5th. A mistake of law or fact apparent upon the face of the award is sufficient cause to set it aside. This is true even in a court of law. Watson on Arbitration and awards, 280, 287; 2 Story's Com., 1453.

6th. When arbitrators undertake to decide according to law, and mistake the law, the award is void if any controversy of facts is involved. 5 Iredell, 498; 2 Story's Com., 1455.

7th. Mistakes of arbitrators in matters of law may be proved by extrinsic evidence, in order to set aside the award. 4 Black., 163.

· 8th. And generally in cases of fraud, misconduct, mistake or accident, courts of equity may interfere to set aside awards upon the same principles which justify their interference in other matters where there is no adequate remedy at law. 2 Story's Com., 1451, 1452.

9th. If the arbitrators, or either of them, receive money from either of the parties before making their award, for their fees or charges, it is misconduct sufficient to set aside the award. 1 Bac. Abr. 320; Watson, Arbitration and Award, 301.

II. The pretended sale on the mortgage was fraudulent as to the complainants. There was no delivery of possession.

In fact there was no sale. The proceeding was a mere attempt of the defendant, by a device, to cut off the rights of the complainants, and vest the property in himself.

III. The decree below rightly directed an account to be taken between the parties on the principles therein stated.

*Yates and Frazer*, for defendant, appellant.

I. By the long silence and acquiescence of the complainants in the award, they are now estopped from impeaching it, except for fraud or corruption not discovered until just before the filing of the bill. *Lloyd vs. Barr*, 11 Penn. State Rep., 41.

II. An award at common law cannot be impeached, except on the ground of corruption, partiality, or excess of power. *Deane vs. Coffin*, 5 Shep., 52; 1 John. Ch. R., 432; *Todd vs. Barlow*, 2 John. Ch. R. 551. That the arbitrators admitted improper evidence is no ground for setting aside the

award. *Lillard vs. Casey*, 2 Bibb. 459; *Johnson vs. Noble*, 13 N. Hamp. R. 286; *Vaughan* vs. *Graham*, 11 Missouri, 475; *Merritt* vs. *Merritt*, 11 Illinois, 565; *Bigelow* vs. *Newell*, 10 Pick., 348. They have authority to decide *conclusively* all questions *of law*. Mistake in adopting erroneous rules of law, no cause for setting aside award. *Boston Water Power Co.* vs. *Gray*, 6 Met., 131; *Campbell* vs. *Weston*, 3 Paige, 138; *Winship* vs. *Jewett*, Barb. Ch. R.; 173.

But the circuit judge took an objection to the award, not made by the bill, and if there made, would have shown no ground for filing the bill, viz: "It is not in accordance with "the submission, and, in material respects, is uncertain, unin-"telligible and difficult, if not incapable, of enforcement."

Then the award is void, and this might be shown in the suit thereon in the court of law. And the bill in this respect should have been dismissed for the reason that the complainants had a plain, adequate, and complete remedy or defense at law.

"The principles upon which relief will be granted against an award, are the same in a court of law, as in a court of equity." *Bell* vs. *Price*, 1 New Jersey Rep.; 32.

But in truth, the award *is* "in accordance with the submission;" and is *not*, "in material respects, uncertain, unintelligible and difficult, if not incapable, of enforcement," as asserted by the circuit judge.

III. Conceding that the mortgage sale was void, for the reasons stated by the circuit judge, the bill should have been dismissed in that respect also.

By default of payment of the mortgage money, the property passed, in law, to the mortgagee, subject only to the mortgagor's right to apply to a court of equity for leave to redeem, which right may be foreclosed by a sale of the property, upon reasonable notice to the mortgagor, without judicial proceedings. *Patchin* vs. *Pierce*, 12 Wend., 61. But this is not a bill praying leave to redeem.

Besides, the mortgage sale was not "irregular and void,"

and the right of the mortgagors to redeem was "foreclosed by the mortgagee, without judicial proceedings, by a sale of the property, upon reasonable notice to the mortgagors."

*By the Court*, SMITH, J.  This is an appeal from the circuit court of Milwaukee county.  The pleadings and proofs are very voluminous, and we shall not here attempt to give even a synopsis of them, but proceed at once to consider the material points presented for our examination.

The objects sought to be accomplished by the bill, as will be seen from a statement of the case, are

1st. To set aside the award mentioned in the bill of complaint, theretofore made by arbitrators of the certain matters in difference between the parties, specified in the submission set forth.

2d. To set aside a sale of the vessel, " Cherubusco," purporting to have been made by the defendant under a chattel mortgage executed by the complainants; and

3d. To obtain an account between the parties.

For the purpose of determining the questions presented for our consideration it is not necessary that we should extend our inquiries beyond the submission, and the relations of the parties at the time it was entered into.

The objections taken to the award are, that the arbitrators made a mistake of law and of fact; that the award is not in pursuance of the submission; that the arbitrators exceeded their authority; that they failed to pass upon the particular matters especially submitted; and, for misconduct of the arbitrators.

Formerly, courts of equity exercised a very great power over awards; but by statute their control over matters of that kind have been very much abridged.  We are not aware of, nor have we been cited to, any statute in this state, by which arbitrations are made by rule of court, in the nature of judgments at law, and thus invested with all the presumptions and

legal intendments that pertain to the latter. (See Story's Eq. Juris., § 1650, *et seq.*)

It is one of the primary requisites to the validity of an award that it must be in pursuance of the submission. Authorities might be cited to almost any extent, but it is deemed unnecessary. The principle is too well established to be now called in question. The validity of the award depends wholly upon the articles of submission, and it must conform thereto, and must embrace the whole of the subject matter submitted, as well as the rights of the parties submitting, so far as they are submitted. Watson on Arbitration and Award, p. 175; 179; Russell's Arbitrator, 236; *Lee vs. Ornstott*, 1 Pike, 206; *Stevens vs. Gray*, 1 Harr., 347; *Gibson vs. Powell*, 5 Smedes & Marsh, 712; *Adams vs. Adams*, 8 N. H. Rep., 82; *Pratt vs. Hackett*, 5 J. R., 614; 11 Wheat., 446; 15 Ala., 398; 2 Halst. C. R., 450; *Solomon vs. McKinstry*, 13 J. R.; 27; *Bean vs. Farnam*, 6 Pick., 269, 4 Dall., 285; 3 Yates, 567; 7 Mass., 399; 5 Wheat., 394; 2 Caines, 235; 3 Cow., 70; 5 Id. 197.

Upon a careful examination of the award rendered in this case, and of the submission, we have been unable to conform the former to the requirements of the latter, and are constrained for that reason as well as others to set it aside.

The submission is in the following words, and duly executed by the parties thereto:

"Know all men by these presents that we, Sylvester Pettibone and Stephen A. Hubbell, of the city of Milwaukee and state of Wisconsin, are held and firmly bound unto John T. Perkins, of the city and county aforesaid, in the sum of two thousand dollars, lawful money, for the payment of which sum to the said Perkins, his heirs, executors, administrators and assigns, well and truly to be made, we bind ourselves, our heirs, executors and administrators firmly, jointly and severally by these presents. Sealed with our seals and dated this 4th day of April, A. D. 1851. Whereas matters of difference have arisen between Sylvester Pettibone and Stephen A. Hubbell and the said John T. Perkins, in relation to the unsettled accounts of the schooner Cherubusco, and the amount of indebt-

edness from the said Pettibone and Hubbell to said John T. Perkins, or from said Pettibone individually to said Perkins, or from said Hubbell individually to said Perkins, arising from unsettled accounts between them in relation to said schooner Cherubusco, and any damages arising on contracts in relation to the running or sailing of said schooner, and all other matters. And whereas it is agreed between the said Pettibone and Hubbell and the said John T. Perkins to refer all unsettled matters of difference between them as aforesaid to the award and determination of E. C. Kellogg, R. K. Caswell and Albert Smith, Esq., who shall be arbitrators to adjust and settle all matters of difference between them of every kind and nature which are not already adjusted. Now the condition of this obligation is such that if the above bounden Sylvester Pettibone and Stephen A. Hubbell, their heirs, executors and administrators, shall and will, upon their parts, jointly and severally, truly stand to, obey, abide, observe, perform, fulfill and keep and pay the award, order, arbitrament and final determination of said arbitrators, so as the said award be made in writing on or before the 15th day of April, instant, then the above bond to be void, otherwise to be in force. And the said Sylvester Pettibone and Stephen A. Hubbell hereby consent and agree that the award so made by the arbitrators be filed in the Milwaukee circuit court, and that a judgment of said court shall be rendered upon said award to be made pursuant to the above submission and bond."

And the award made by the arbitrators is as follows:

" *To all to whom these presents shall come—Greeting :*

"Whereas certain controversies have arisen between John T. Perkins, Sylvester Pettibone and Stephen A. Hubbell; and whereas the said parties, by a written agreement by them for that purpose duly made on the 4th day of April, 1851, stipulated and agreed, each with the other, to submit the said controversies to E. C. Kellogg, R. K. Caswell, and Albert Smith, so that the said award should be made on or before the 15th day of April then current, and after the entry upon the execution of said arbitration, it was found that said award could not be

made at the time aforesaid, it was on the 14th day of April, 1851, further stipulated and agreed by and between the parties aforesaid that the time for making the said award should be extended until the 28th day of April, 1851; Now therefore know ye that the arbitrators hereinbefore named, duly assembled in the city of Milwaukee, under, and in pursuance of, said agreement of submission, on the 9th day of April, 1851, and all of the said parties being present, with their respective counsel, the said arbitrators were duly sworn according to law, and entered upon the discharge of the duties devolving upon them, as such arbitrators as aforesaid, and from day to day continued so to consider, from time to time the various matters pertaining to said arbitration and the proofs and allegations of the said several parties, and did fully hear and consider the same in the presence of the said parties, and their counsel, and after due deliberation thereupon, had by the arbitrators aforesaid, concerning the matters submitted to them as aforesaid, by the said submission hereto annexed, we do award, order and determine that there is due and unpaid, from the schooner Cherubusco the sum of two thousand three hundred and forty-three dollars and fifty-one cents, unto the said John T. Perkins, with interest on the same, and that of this amount the said Hubbell & Pettibone are personally liable to the said John T. Perkins for the sum of eleven hundred and seventy-one dollars and seventy-five cents, with like interest, and that the remaining sum of eleven hundred and seventy-one dollars and seventy-five cents, as aforesaid, so due to the said John T. Perkins, shall be a lien upon said schooner Cherubusco, and upon her earnings, freights, or other increase, first to be paid to said John T. Perkins independent of all other claims except ordinary expenses in the use of the same. And we do further award and declare that the said parties shall pay to the arbitrators the sum of one hundred and fifty dollars for their services in this behalf, upon delivery of this award, and to be paid one-half by the said Pettibone and Hubbell, and the other half by the said John T. Perkins, and that no other costs or charges arising out of his a rbitration shall be a charge of either of said parties against

the other or any of them ; and that all accounts of the respect-ive parties produced before us shall be taken and deemed as settled and cancelled, so far as they have been submitted to us. In witness whereof we have hereunto set our hands and seals this 24th day of April, in the year 1851.

[Signed]          ALBERT SMITH,    [L. S.]

                    R. K. CASWELL,    [L. S.]

                    E. C. KELLOGG,    [L. S.]

" Sealed and delivered in }
    presence of      }

" M. H. ORTON,

" J. E. ARNOLD."

It will be seen that the matters submitted, were, the unset-tled accounts of the schooner Cherubusco, the amount of indebt-edness from Pettibone and Hubbell to Perkins, the indebted-ness of Pettibone individually to Perkins, or of Hubbell indi-vidually to Perkins, arising from the unsettled accounts between them in relation to the schooner Cherubusco, and any damages arising on contracts in relation to the running of said schooner.

The award fails to meet the requirements of the submission in several important respects essential to the settlement of the matters in dispute between the parties.   It does not find or determine the individual indebtedness of Hubbell to Perkins, which, it will be seen upon an examination of the bill, was a material element in the controversy.   There is the same defect in it in regard to the individual liability of Pettibone.   The award is, that there is due and unpaid from the schooner Cher-ubusco, the sum of $2343.51 to Perkins, with interest, &c., and of this amount Hubbell and Pettibone are personally liable to Perkins for $1171.75, with like interest, and that the remaining sum of $1171.75, so due to Perkins shall be a lien upon the schooner Cherubusco, and upon her earnings, freights, and other increase, first to be paid to the said Perkins independent of all other claims except ordinary expenses in using the same How much of these sums are to be paid by Hubbell ?   What was the amount of his individual indebtedness ?  If the vessel owed the amount specified in the award to Perkins, what por-

tion of the vessel's debt was chargeable to the several owners? The award is so uncertain, so vague, and inexplicit, that we do not see how it could be enforced. Nor is it easy to gather from the language of the award the intention of the arbitrators. It certainly does not respond to the submission entered into by the parties, and for that reason, as well as for its uncertainty, it must be set aside.

There are many other objections taken to the award, but we do not deem it necessary to allude to them, as the objection just noticed is fatal. It may perhaps, be well to remark, as this case must be remanded for an account between the parties, that very grave objections might be commented upon, which were taken to the character of the evidence received by the arbitrators. However, the accounting officer to whom under the decree the case will be referred, will doubtless be governed by the established rules in such cases, and further comment is unnecessary.

In regard to the sale of the schooner by Perkins under the chattel mortgage, it is sufficient to say, that the proofs in the case abundantly satisfy us that it was grossly fraudulent, and absolutely void. Comments upon the transaction will not help or extenuate the conduct of the defendant in that behalf, and we prefer to pass it by with the simple utterance of our own conclusion from the evidence in the case.

It is apparent, therefore, from the remarks already made, that the rights of the parties stand as they did before the submission, and before the pretended sale of the vessel by Perkins, and that the decree of the court below is right and must be affirmed.

Decree affirmed with costs, and cause remanded.