# William Wayne *v.* Elbert W. Lapp, Appellant.

*Landlord and tenant—Rent—Burning of building.*

Where, after the execution of a lease of a farm, a barn on the leased premises is burned, and the tenant takes possession on the assurance of the landlord that he would erect a barn before harvest time, and, after entry by the tenant, with his consent, the landlord rebuilds the barn, but not in time to store the crops, the loss to the tenant which he is entitled to deduct from the rent is the difference between the rental value of the farm with the barn, and the rental value of it without the barn for the period during which the barn was being rebuilt.

Argued Feb. 11, 1897. Appeal, No. 19, Jan. T., 1897, by defendant, from judgment of C. P. Chester Co., Aug. T., 1896, No. 54, on case tried by the court without a jury. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and FELL, JJ. Affirmed.

Amicable action of assumpsit to recover one year's rent of a farm.

The case was tried by WADDELL, P. J., without a jury.

The findings and opinion of the court were as follows:

This was an amicable action in assumpsit instituted by the plaintiff to recover one year's rent under a written lease, dated the 31st day of January, 1895. The lease was to continue for two years, and the tenancy was to commence April 1, 1895. The property contained something over three hundred acres, and the rent was fixed at $900 per annum, payable quarterly. There were certain other covenants provided for by the lease, but which we do not understand enter into this controversy. At the time the lease was executed there were two large barns upon the property for the exclusive use of the tenant. One of these was totally destroyed by fire on the 28th or 29th day of March, 1895. The tenant took possession on the 1st of April, 1895, two or three days after the fire, and has continued in possession ever since. The landlord, Captain Wayne, proceeded soon after the tenant, Elbert W. Lapp, took possession, to erect temporary shedding to cover eight or ten head of horses, and to erect a new barn in the place of the one

destroyed. This was completed the last of September or beginning of October, 1895, at a cost of $2,500. The barn burned was used for stabling horses and storing crops. The one left was used for stabling cows and storing crops. It was large enough to hold about thirty-nine cows, but not large enough to hold all the crops raised upon the property. The new barn erected was not as large as the one destroyed, and was not sufficiently advanced at harvest time to hold the crops. The tenant was compelled to stack a large part of his crops that season. He estimates his loss to be $1,700 or $1,800, because of being deprived of the use of the barn burned, and claims to set it off against the rent. The landlord denies all liability on this account, but admits an indebtedness of $216.45 for material furnished.

The question presented for our consideration, under these stated facts, is how much rent is due the plaintiff. As we have found, one of the barns upon these premises was burned four days before the lessee was to take possession under his lease. This deprived him of the material use of a portion of the demised premises. The landlord could not deliver to him all he had covenanted to deliver. The tenant might have been entitled to consider the lease as a whole and might, possibly, have declined to take possession. But he took possession after the burning. Does this estop him from refusing to pay his rent? This would be so, if he went into possession without anything being said on the subject of the fire. He would be presumed to have waived all loss that might follow the destruction of the use of the barn. But the landlord, by way of inducement, undertook, before the tenant took possession, to have a roof for his crops before harvest time. This conduct on the part of the landlord, we think, would prevent him invoking the doctrine of estoppel. He led the tenant to believe that the injury done to his tenancy by reason of the fire would be restored, and in compliance with this understanding the landlord proceeded in time to rebuild the barn.

By reason of the fire and rebuilding the tenant was deprived of the full enjoyment of the property for a long period of time. Is the tenant entitled to a suspension of his rent under these circumstances? That is the question presented in the case, and is perhaps answered by Baron Gilbert in his Treatise on Rents,

p. 145, as quoted by Justice PAXSON in Hoevèler v. Fleming, 91 Pa. 324: "A rent is something given by way of retribution to the lessor for the land demised by him to the tenant, and consequently the lessor's title to the rent is founded upon this, that the land demised is enjoyed by the tenant during the term included in the contract, for the tenant can make no return for the thing he has not. If, therefore, the tenant be deprived of the thing let, the obligation to pay rent ceases, because such obligation has its force only from the consideration, which was the enjoyment of the thing demised."

If this doctrine was applicable to the case being considered by Justice PAXSON, where the fire took place after the tenancy commenced, how much more applicable is it to the case being considered by us, where the fire took place after the lease was executed, but before the tenant took possession. It might be sufficient for us to hold that the tenant was entitled to an abatement of his rent because he "can make no return for the thing he has not," but in addition to this his landlord deprived him of the use and enjoyment of a portion of the property for the purpose of rebuilding. The rebuilding deprived the tenant of much beneficial enjoyment of the premises while the work was going on. "If the landlord took possession of the property for this purpose without the consent of the tenant it was an eviction of him; if with his assent it was a rescission of the lease; and in either case the rent was suspended": Magaw v. Lambert, 3 Pa. 444; Hoeveler v. Fleming & Co., 91 Pa. 324; Heller v. Royal Insurance Co., 133 Pa. 152. [We do not understand, however, that the defendant is entitled to measure his loss by an estimate in damages. No intentional wrong was done by the landlord. He took possession of the property with the consent of the tenant, to rebuild the barn. He thus rescinded the lease and suspended the rent. Under these circumstances the real loss is the value of the use of the part taken, in connection with that which remains, and it is measured by the difference in rental value: Irwin v. Nolde, 176 Pa. 594. The damage here was not to the tenant's crops, but to his leasehold, and it should be measured by the diminution in rental.] [1]    176 Pa. 602.

Adopting this as the rule in estimating the defendant's loss, we have the testimony of but one witness. He estimates the

difference in rental value at $300. This in our opinion is the loss sustained by the defendant, and he is entitled to have that amount deducted from the rent sued for. The lease fixes the rent at $900 a year, payable quarterly. Nothing has been paid. There was due the plaintiff, therefore, on the 1st of April, 1896, the sum of $900, less the loss sustained by the defendant, which we have estimated at $300, making the balance due $600. The interest upon this up to October 1, 1896, is $18.00, thus making the gross amount due plaintiff $618. He admits owing the defendant the sum of $216.45, for materials furnished. This was due and payable April 1, 1896, and is entitled to bear interest from that date. That would amount to $6.48 on October 1, 1896, making $222.93, as the amount which the defendant is entitled to have deducted from the plaintiff's claim. This will leave as due the plaintiff the sum of $395.07, for which amount the prothonotary will enter judgment in favor of the plaintiff, unless exceptions shall be filed to this decision within thirty days after notice given by the prothonotary as directed by the act of assembly of April 22, 1874, under which this cause was heard.

Exceptions to the decision of the court were overruled, and judgment was entered for plaintiff for $395.07. Defendant appealed.

*Errors assigned* were (1) portion of the opinion as above, quoting it; (2, 3) overruling exceptions to decision, quoting exceptions.

*Charles H. Pennypacker*, for appellant. — The measure of damages is what defendant would have made had the farm barn remained intact, so that the measure of loss is to be found in what was loss to the tenant by reason of the absence of the barn. This is not speculative damage out of the failure of the contract: Hoy v. Gronoble, 34 Pa. 9; Pennypacker v. Jones, 106 Pa. 237.

*Henry Pleasants*, for appellee.—Had the fire occurred after April 1st, it would certainly have been no defense whatever to the payment of rent reserved: Dyer v. Wightman, 66 Pa. 427; Bussman v. Ganster, 72 Pa. 286.

The principles upon which the tenant's liability for rent depend, even after the destruction of the leased premises, would certainly apply whether the fire occurred a day before or a day after the commencement of the term. In no case is he deprived by the act or default of the landlord of what he agreed to pay for: Paine v. Meller, 6 Ves. Jr. 352; Taylor v. Caldwell, 113 Eng. Com. 824; Counter v. MacPherson, 5 Moore P. C. 83; Woodfall's Landlord and Tenant, 110. If, however, it be claimed that the entry of the landlord to make the repairs prevents the application of the foregoing rules, it is to be answered that this entry was, on defendant's own theory, by mutual consent. Such entry does not necessarily constitute an eviction or even a rescission of the contract, " but must depend to some extent upon the circumstances of each particular case : " Hoeveler v. Fleming, 91 Pa. 325; Seabrook v. Moyer, 88 Pa. 417; Maberry v. Dudley, 11 W. N. C. 217; Magaw v. Lambert, 3 Pa. 445.

If defendant be entitled to any abatement for rent under the circumstances except that allowed by his landlord, it would be indeed difficult to find a measure of damages more equitable and satisfactory than is established by Judge FELL, in Irwin v. Nolde, 176 Pa. 602, which was adopted by the court in this case.

PER CURIAM, March 1, 1897:

We find nothing in this record of which the defendant has any just reason to complain. The learned trial judge's rulings were quite as favorable to him as he could reasonably ask. There appears to be nothing in any of the specifications of error that requires discussion. Neither of them is sustained.

Judgment affirmed.