KELLOGG and another, Respondents, vs. MALICK, Appellant.

*April 7—June 23, 1905.*

*Landlord and tenant: Leases: Covenants: Breach: Measure of damages: Chattel mortgages: Foreclosure: Unfair sale: Remedy of mortgagor.*

1. In the absence of circumstances, special or otherwise, brought home to the knowledge of the lessor, the damages which may be recovered in case of breach of the covenants of a lease respecting the condition of the leased premises are the difference be-

tween the rental value of the property in the condition in which it was contracted to be, and the rental value in its actual condition.

2. In such case, if the contract be made for a particular use by the lessee, the rental value for that use is the standard by which damages must be awarded.

3. In such case the fact that such special circumstances came to the knowledge of the lessor after the execution of the lease does not take the right to damages out of the general rule.

4. In an action to recover for breach of covenants in a lease respecting the condition of the leased premises for carrying on a dairy farm, under the evidence, stated in the opinion, *held:*

(1) The damages claimed could not be said to have been within the contemplation of the parties at the time the lease was made.

(2) The damages were such as plaintiff might have avoided in the exercise of ordinary care.

(3) Such damages were too remote, contingent, uncertain, and speculative, and should have been excluded.

5. On foreclosure of a chattel mortgage of property consisting of 103 head of cattle and one horse, worth $1,720, the mortgagee, without competition, bid in the property at his own price, in two lots, one of twenty-eight cattle and the other of seventy-five cattle and the horse, notwithstanding a request by the mortgagor that the animals be sold so as to accommodate bidders present who desired to buy in small lots, but not the whole herd. *Held*, that a finding that such sale was not made in good faith nor the amount received on the sale adequate was supported by the evidence, and the sale being unfair was void, which left the mortgagee bound to account for the value of the property as of the time of seizure.

6. In such case, where the mortgagee thereafter sold the greater portion of the property converted, in small lots and to different persons, and put it out of his power to return the property, he cannot complain because charged with such value, or insist that the mortgagor's remedy is to redeem.

7. In such case the mortgagee cannot be allowed the expense of feeding and improving the animals between the seizure and sale, nor credited with the value of an animal which died after possession taken.

8. After lessees' knowledge of breach by the lessor of a covenant to furnish certain pasturage they refused to pay rent, but continued possession until judgment was rendered against them in an unlawful detainer action. Thereafter the lessees appealed, but gave no bond to stay execution, moving out, however, before any

writ of restitution was issued, and continued the litigation to the supreme court, where the judgment below was affirmed. *Held*, that the lessees could not recover for work done on the place after they had breached the contract in failing to pay rent, and had knowledge of the landlord's failure to perform his covenants.

APPEAL from a judgment of the circuit court for Portage county: CHAS. M. WEBB, Circuit Judge. *Reversed.*

In April, 1901, plaintiffs owned and were carrying on a small farm in Lincoln county, Wisconsin, and kept thereon horses, twenty-one head of cattle, and farm machinery. The land was worth $2,500, the cattle $675. At that date defendant lived in the city of Stevens Point, Portage county; was mainly a banker and real-estate speculator. He owned nearly 1,000 acres of cut-over land near the city of Stevens Point, partly under cultivation, and had a residence and somewhat extensive farm buildings thereon, where he had previously lived and cultivated the farm. He proposed to the plaintiffs to enter into the dairying business on an extensive scale on his farm. Plaintiffs visited the farm and made a hasty, partial examination of it, just as the winter was breaking up. The ground was soft; the frost was going out. They drove on two of the fields, but could only go to the edge of them; did not explore the whole of the land. They talked about the sufficiency of the cleared land and of the pasture. They did not examine the land further because defendant represented he had plenty of pasture and would provide plenty, and plaintiffs relied to some extent upon these representations. Defendant leased the premises to plaintiffs for five years, with option to remain for another term. The lease provided for the sale by defendant to plaintiffs of thirty-three head of grade Jersey cows for $875, a team of horses for $300, and some farm tools for $325, and for the sale by the plaintiffs to defendant of their farm in Lincoln county for $2,500; the consideration to be applied first in the payment of a $500 mortgage, next in payment of the cattle, horses, and tools pur-

chased from defendant; the balance in cash; defendant agree-
ing to build a suitable creamery, silo, finish the barn, and
provide pasture for 100 head of cattle, and cleared land
enough to provide feed for 100 head—not less than 100 acres.
Prior to entering into said contract both plaintiffs had been
upon the premises and had some opportunity to examine the
same and acquaint themselves with its character and condi-
tion, and knew and understood, that the 950 acres were the
premises intended to be leased to them by virtue of said lease.
The plaintiffs entered into possession of the premises about
April 22, 1901, and continued in possession until about Feb-
ruary 10, 1902, but had no cows on the premises later than
January 29, 1902. It was mutually agreed that no rent was
to begin to accrue until June 1, 1901. The lease required
plaintiffs to furnish 100 head of cattle within one year. They
brought to the farm from Lincoln county twenty-one head of
cattle, and the herd which they bought from defendant and
which remained on the place consisted of thirty-two head. At
or about the time of making the lease, and before plaintiffs
moved to the premises, they bargained for a herd from one
Steward, consisting of twenty-eight cows, and thereafter, and
on or about the 30th of June, 1901, purchased the Tobey
herd, consisting of seventeen head. The defendant at no time
objected to the number of cattle plaintiffs were putting on
the place, or that they were increasing their herd too rapidly,
but encouraged and aided them in increasing their stock;
plaintiffs borrowing from defendant for this purpose about
$2,250 and giving notes therefor secured by two chattel mort-
gages on the cattle. Shortly before plaintiffs removed from
the premises judgment was rendered against them in an un-
lawful detainer action commenced by defendant to recover
possession of said premises, awarding defendant possession
of the premises. Plaintiffs appealed from said judgment be-
fore removal from the premises, but gave no bond for stay

of execution.    Before they removed from the premises de-
fendant seized the cattle under the chattel mortgages on a
warrant of replevin.

The season was dry and plaintiffs' stock ran down, and they
failed to make a success of the business, claiming it was due
to lack of pasturage, and sued for damages.    Defendant set
up as defense, after general denial and admission of making
lease, that he was entitled to reasonable time to make pasture,
that the same was poor on account of the dry season, and that
plaintiffs failed to procure ground feed to feed the cattle,
which was the cause of deterioration in value and failure to
produce milk; also setting up as counterclaims: (1) Rent,
$656.20 from June, 1901, to February, 1902; (2) guaran-
tied note, $909 and interest; (3) note, $1,527.97 and inter-
est; (4) feed, wood, etc., furnished by defendant to plaintiffs,
$153.10; (5) feed sold by defendant to plaintiffs, $194.74;
(6) labor performed by defendant for plaintiffs, $61.50.
Plaintiffs replied, setting up defenses to counterclaims, and
alleging, among other things, seizure of the property under
chattel mortgages, and, for supplemental reply, set up execu-
tion of the notes and mortgages, seizure of property by de-
fendant, illegal foreclosure of mortgages, and value of prop-
erty when seized more than amount of claim of defendant in
his second and third counterclaims.    The action was tried be-
fore a referee, who found, among other things, that by the
covenants of said lease defendant was "to furnish pasture for
100 head of cattle, and clear land enough to.provide feed for
them, not less than 100 acres;" that defendant failed to fur-
nish pasture and feed, and that by reasonable diligence he
could have done so; that, in consequence thereof, plaintiffs
sustained damages by depreciation of cattle, $1,500; expense
for feeding, $330; loss on butter product, $1,486.28; loss on
milk product, $192.    The referee disallowed $322 claimed by
plaintiffs_for work done by them in plowing, fertilizing, and

breaking the leased premises in the summer and fall of 1901, and charged defendant with the cattle bid in at $1,720, and refused to allow $1,257.71 claimed by defendant as net cost of keeping the cattle seized. The court and referee also found:

"Plaintiffs never having operated the place under favorable conditions, and never for a whole year, there is no experience or data upon which to compute prospective profits, if the same ought to be allowed. The expert testimony in that particular is subject to too many conditions and contingencies when attempt is made to apply it to the case. Also it is found that, if plaintiffs had produced from their cows the additional amount of milk and butter hereinbefore mentioned, there would have been an additional expense in operating the place, but the same is small, and there is no evidence from which it can be ascertained. . . . That with sufficient pasture and proper feed the cows which plaintiffs had on the place ought to have produced 11,750 pounds of butter, which ought, on the average, to have sold for 20.36 cents per pound. That plaintiffs' cows only produced 4,450 pounds, and, owing to the insufficiency of the pasture and feed, there was lost to plaintiffs 7,300 pounds that might otherwise have been produced, which would have been reasonably worth $1,486.28, to plaintiffs' damage $1,486.28."

The court and referee further found that, with proper and sufficient pasture and feed, a cow ought to produce a certain amount of skim milk, which was not produced. The court confirmed the report of the referee, and added $322 for work done on the premises in the summer and fall of 1901 disallowed by the referee, and ordered judgment in favor of the plaintiffs and against defendant for the sum of $2,781.79, damages and costs, from which this appeal was taken.

For the appellant there was a brief by *McFarland, Hanna & Murat,* and oral argument by *C. D. McFarland.*

For the respondents there was a brief by *Curtis, Reid & Smith* and *Park & Carpenter,* and oral argument by *A. H. Reid* and *F. J. Smith.*

KERWIN, J.    1. The question respecting the rule of damages raised by the first assignment of error involves the main controversy in this case.    The court below found that, as a result of the breach of the covenants in the lease from defendant to plaintiffs to furnish pasture and feed for plaintiffs' cattle, plaintiffs were entitled to recover for depreciation of cattle, $1,500; expense for feeding, $330; loss on butter product, $1,486.28; loss on milk product, $192; and the question arises whether such damages were properly recoverable in the action.    It is established that under the lease the pasture was to be furnished and the feed raised upon the farm leased.    It is also undisputed that plaintiffs were well acquainted with the premises, and discovered about the time they took possession that the pasture was insufficient and that their cows were running down, but afterwards, on June 30th, put on the farm an additional herd of seventeen head of cattle; that they, under the lease, had one year from date thereof to provide themselves with 100 cows, the rent which they were to pay under the lease being in proportion to the number of cattle they had upon the farm; that defendant acted in good faith and believed the premises would furnish sufficient pasture for 100 head of cattle; that he was to clear more land for pasture and feed, and did some clearing during the season, and prepared the same for pasture and feed, but, the season being dry, the seeding did not catch well or produce very substantial pasture.    The plaintiffs continued in possession from about the date of the lease, April 22, 1901, until February 10, 1902, during all of which time their cows were depreciating in value and damages accruing.    The general rule with respect to the measure of damages in actions upon contract laid down in the leading case of *Hadley v. Baxendale,* 9 Exch. 341, is referred to with approval by this court in many cases, and, among others, *Hinckley v. Beckwith,* 13 Wis. 31; *Cockburn v. Ashland L. Co.* 54 Wis. 619, 627, 12 N. W. 49; *Shepard v. Milwaukee G. L. Co.* 15 Wis. 318; *Richardson v.*

*Chynoweth,* 26 Wis. 656; *Chapman v. Ingram,* 30 Wis. 290; *Ingram v. Rankin,* 47 Wis. 406, 2 N. W. 755; *Guetzkow Bros. Co. v. A. H. Andrews & Co.* 92 Wis. 214, 66 N. W. 119; *Gross v. Heckert,* 120 Wis. 314, 97 N. W. 952. Under this rule the damages which can be recovered for breach of contract are such as may fairly and reasonably be considered as either arising naturally—that is, according to the usual course of things—from such breach, or such as may reasonably be supposed to have been in contemplation by both parties at the time they made the contract as the result of the breach of it. In the absence of circumstances, special or otherwise, brought home to the knowledge of the lessor, therefore, the damages which may be recovered in case of breach of the covenants of a lease respecting the condition of the leased premises is the difference between the value of the use of the premises in the condition as contracted to be, and the rental value in their actual condition. 3 Sutherland, Damages (3d ed.) § 872; *Pewaukee M. Co. v. Howitt,* 86 Wis. 270, 56 N. W. 784; *Serfling v. Andrews,* 106 Wis. 78, 81 N. W. 991; *Cook v. Soule,* 56 N. Y. 420; *Long v. Gieriet,* 57 Minn. 278, 59 N. W. 194; *Allendorph v. Banks,* 8 Kan. App. 219, 55 Pac. 488; *Lightfoot v. West,* 98 Ga. 546, 25 S. E. 587; *Jackson v. Farrell,* 6 Pa. Super. 31; *Wayne v. Lapp,* 180 Pa. St. 278, 36 Atl. 723; *Leick v. Tritz,* 94 Iowa, 322, 62 N. W. 855; *Taylor v. Lehman,* 17 Ind. App. 585, 46 N. E. 84, 47 N. E. 230. And if the contract be made for a particular use by the lessee, the rental value for that use will be the standard by which damages may be awarded. 3 Sutherland, Damages (3d ed.) § 872; *Bien v. Hess,* 102 Fed. 436, 42 C. C. A. 421.

The rule of damages laid down in the foregoing cases and many others which might be cited clearly applies to the case before us, unless it can in some way be taken out of the general rule by circumstances, special or otherwise, known to both parties at the time the lease was made; and it will not

do that such special circumstances came to the knowledge of the lessor after the execution of the lease. *Bradley v. C., M. & St. P. R. Co.* 94 Wis. 44, 68 N. W. 410. As we understand the argument of counsel for respondents, some importance is attached to the finding that they were unable to procure other pasture or feed, so as to prevent the damages which resulted. Whether it would cut any figure even if it were known to both parties at the time of execution of the lease that other pasture could not conveniently be secured it is unnecessary to consider, because there is neither finding of fact nor evidence that any such circumstances were known to defendant at the time as would take the case out of the general rule. All the cases cited by counsel for respondents are where the damages recovered were the natural and proximate result of the breach, and, in the light of circumstances known to both parties at the time of making the contract, might reasonably be supposed to have been in contemplation of the parties as the probable result of a breach of it. We will refer to a few of them: *Hinckley v. Beckwith,* 13 Wis. 31, is put upon the express ground that the damages recovered were certain in their nature and in respect to the cause from which they proceeded, and were fairly in the contemplation of the parties when the contract was made. *Poposkey v. Munkwitz,* 68 Wis. 322, 32 N. W. 35, is where the lessor executed a lease, knowing that he could not put lessee in possession, in order to maintain the good will of his business. This case clearly recognizes the rule in *Hadley v. Baxendale,* 9 Exch. 341, and places the right to recover damages upon the ground that "he knew that there was a valid, paramount lease upon the premises, executed by himself to Wilde & Uhlig, having seventeen or eighteen months to run after the commencement of the plaintiff's term." The lessor therefore knew, when he leased the store, of the defect in his title which prevented him from assuring the plaintiff quiet enjoyment of the premises, and also that the store was hired for the purpose of con-

tinuing the former business of the lessee, which had been established, and the continuation of which in that locality was valuable. At page 335 of 68 Wis. (32 N. W. 41) the court says:

"It is conceded that if the plaintiff had not a business already built up and established in the same vicinity, which, with its good will, could have been transferred to the store No. 411 Broadway, there would be no basis upon which to estimate the prospective value of the business which the plaintiff would have done there, had he obtained possession and carried on the business therein."

*Pewaukee M. Co. v. Howitt,* 86 Wis. 270, 56 N. W. 784, was an action for rent; and under a covenant in the lease by lessor to put in a water-wheel of not less than fifty horse-power—one of only thirty horse-power having been furnished—it was held that the rule of damages in such case was the difference between the rental value of the premises with the specified wheel and the rental value without it. No allowances were made for prospective profits as damages, and the case was distinguished from *Poposkey v. Munkwitz, supra,* on the ground that it did not appear that a like business had been built up, which might serve as a basis for allowance of such damages. So, in *Raynor v. Valentin Blatz B. Co.* 100 Wis. 414, 76 N. W. 343, the business had been established which furnished a basis for the recovery of anticipated profits; and it was held that the allowance of such profits in such case was clearly within the contemplation of the parties and not too remote or conjectural, and were capable of being ascertained with reasonable certainty, because the plaintiff had been transacting the same business for years in the same building. In *Gross v. Heckert,* 120 Wis. 314, 97 N. W. 952, the claim for damages was failure to put plaintiff in possession according to the terms of lease. It appeared that the lessor knew the use the premises were to be devoted to, and that the lessee purposed preparing for the enjoyment of the lease, and, relying upon lessor's agreement

to put him in possession, incurred obligations and paid out money in anticipation of enjoying his term, and was damaged by reason of the lessor's failure to put him in possession. So it is very clear that the damages recovered in this case were within the contemplation of the parties at the time the contract was made and the necessary result of a breach of it.

But it is unnecessary to further discuss the authorities cited by respondents. We are convinced that the case before us cannot be brought within the rule of such cases. Moreover, profits upon the farm in question were wholly speculative. Plaintiffs had not built up a business. There was no basis, as appears from the record, for determining profits, or whether any would be made in the business. It was unlike an established business which had been run for years and profits made; nor could it have been contemplated that, in case of failure of pasture, there would have been a loss, since it is reasonable to suppose, in the absence of circumstances known to the parties to the contrary, that the plaintiffs would have made other provisions to supply pasture in case the pasture contracted for should prove insufficient, and that the general rule of damages would compensate them in such event. It is probably true that the plaintiffs acquiesced in the situation and relied upon the premises for pasture as they existed. They had as full knowledge at or about the time possession was taken of the condition and character of the premises as the defendant, and, notwithstanding they claimed the pasture proved insufficient very soon after taking possession, they still continued to keep all their stock thereon, and even put on an additional herd of seventeen head after discovering the alleged insufficiency. If it were necessary to consider the finding to the effect that defendant might, with reasonable diligence, have cleared more land and gotten the same in a condition so that grass would grow thereon and furnish sufficient pasture for the year 1901, we should be very strongly inclined

to hold such finding not supported by the evidence. The testimony is practically undisputed that the season was dry, the soil light and sandy, and it was difficult to get a catch of seeding that year. The great weight of the testimony establishes the fact that no substantial pasture could have been obtained from new seeding during the season of 1901 after the date of the lease, April 22d; and it does not appear from the record that the plaintiffs used any diligence to procure land upon which to raise feed to supply the deficiency occasioned by defendant's breach of covenant in that regard. The finding that the purchases of stock after execution of lease were made before plaintiffs had good reason to believe they would suffer any damages under their contract is not sustained by the evidence. They purchased the Tobey herd June 30th, and it is clear from the evidence they knew of the deficiency of pasture before this. One of the plaintiffs testified that the cattle commenced running down soon after they were turned in pasture; that he noticed deficiency of pasture the first time he went over it; that the cattle ran down within a month; that he made examination May 20th and pasture was poor then. It was the duty of the plaintiffs, upon any phase of the case, to have reduced the damages to a minimum when they discovered that the pasture was not sufficient and profits could not be made, but losses incurred. It was their duty to have taken some steps to avoid such damages. They did not do so. They enhanced the damages, and, so far as appears in this case, may have produced them all by increasing the number of cattle upon the premises after discovery of the insufficiency of the pasture, and in other respects not necessary to detail here. It appears from the record that the plaintiffs could have avoided a large amount of the damages which the referee and court found were incurred had they used diligence to do so. They were directly responsible in continuing the business at a loss, and in fact incurring all the loss after knowledge that the business was running at a loss, which they had shortly

after taking possession; and, even if the plaintiffs could re-
cover damages in this case under the rule adopted by the court
below, they are entitled to no damages which might have been
avoided by them in the exercise of care on their part. *Flynn
v. Trask,* 11 Allen, 550; *Poposkey v. Munkwitz,* 68 Wis.
322, 32 N. W. 35; *Adair v. Bogle,* 20 Iowa, 238; *Bradley
v. Denton,* 3 Wis. 557; *Anderson v. Sloane,* 72 Wis..566,
40 N. W. 214; *Cook v. Soule,* 56 N. Y. 420. The damages
recovered below under the first assignment of error were too
remote, contingent, uncertain, and speculative, and therefore
should have been excluded. *Bradley v. Denton, supra; Bray-
ton v. Chase,* 3 Wis. 456; *Wright v. Mulvaney,* 78 Wis. 89,
46 N. W. 1045; *Anderson v. Sloane, supra; Gross v. Heck-
ert,* 120 Wis. 314, 329, 97 N. W. 952; *Bierbach v. Goodyear
R. Co.* 54 Wis. 208, 11 N. W. 514; *Pewaukee M. Co. v.
Howitt,* 86 Wis. 270, 56 N. W. 784; *Prosser v. Jones,* 41
Iowa, 674; *Osborne v. Poket,* 33 Minn. 10, 21 N. W. 752;
*Rhodes v. Baird,* 16 Ohio St. 573; *Greene v. Williams,* 45
Ill. 206; *Howard v. S. & B. Mfg. Co.* 139 U. S. 199, 206,
11 Sup. Ct. 500; *Manhattan S. Works v. Koehler,* 45 Hun,
150; *Haker v. Boedeker,* White & W. Civ. Cas. (Tex.)
§ 1034; *Fuller v. Curtis,* 100 Ind. 237.

After a careful examination of the cases heretofore cited
and many others, and in the light of the facts appearing in
the record, we are convinced that the proper rule of damages,
and the one which should have been adopted by the court
below, is the difference between the rental value of the prop-
erty in the condition in which it was contracted to be, and
the condition in which it existed for the use intended.

2. Error is assigned because the court charged defendant
with $1,720, value of the cattle sold under the chattel mort-
gages, and refused to allow him $1,257.71, the net cost of
keeping the cattle between the time of seizure and sale. He
took possession of the cattle under the chattel mortgages, and,
after holding them for about three months, undertook to sell

them, but, upon the sale, practically precluded competition by selling in such manner as to prevent competitive bids, and ·secured the property at his own price. It appears that at the time of seizure, January 29th, the cattle were worth $1,470, ·and two horses $250, making a total of $1,720; that during the three months before sale defendant expended in feeding and improving the animals, less what he received for their ·produce, $1,257.71, and their value was much improved by such feeding. After this he made a sale and bid in the whole lot for $1,300. Plaintiffs were present at the sale and asked that the animals be sold in small lots. Several bidders were also present who desired to buy small lots, but not the whole herd. Defendant put the herd up in two lots—one of twenty-·eight cattle covered by one chattel mortgage, and the balance of the 105 cattle and one horse covered by the other chattel mortgage in another lot—and no one bid but those represent-·ing defendant, and the two lots were bid in for him. So, under the sale, defendant got the cattle and horses for $1,300, or only a few dollars more than was expended in feeding them for the three months after seizure. Whether this sale ·was planned and executed to defraud plaintiffs it is unnecessary to decide. It was certainly well calculated to take an unjust advantage of them. In the seizure of the property under the mortgages defendant owed a duty to plaintiffs. That duty required him to use all fair and reasonable means in obtaining the best price for the property on sale. The referee and the court found that the sale was not made in good faith nor the amount received upon the sale adequate, and that defendant took a wrongful and unfair advantage of plaintiffs. We think the finding on this point is fully sustained by the evidence. The sale, therefore, being unfair was ·void, and the defendant was bound to account for the value ·of the property. *Boyd v. Beaudin,* 54 Wis. 193, 11 N. W. .521; *Vreeland v. Waddell,* 93 Wis. 107, 67 N. W. 51; *Pettibone v. Perkins,* 6 Wis. 616. Assuming that the original

seizure of the property under the mortgages was lawful, it was upon the theory that a sale in good faith would be made and no unlawful advantage would be taken of plaintiffs after defendant got possession of the property. The sale being void there was no valid foreclosure, and the acts of defendant amounted to a conversion of the property to his own use, and rendered him liable for its value at the time he converted it. *Gauche v. Milbrath,* 94 Wis. 674, 69 N. W. 999; *Tenney v. State Bank,* 20 Wis. 152; *Hartman v. Ringgenberg,* 119 Ind. 72, 21 N. E. 464; *Mussey v. Cahoon,* 34 Me. 74; *Sackrider v. M'Donald,* 10 Johns. 253; *Van Brunt v. Schenck,* 13 Johns. 414; *Jarratt v. Gwathmey,* 5 Blackf. 237.

It is claimed by counsel for defendant that plaintiffs' remedy is to redeem, but the defendant, by converting the property to his own use and selling it, or the greater portion of it, in small lots to different persons, put it out of his power to return the property on tender of amount, and makes a proceeding to redeem of no avail. He cannot complain, therefore, because charged with the value of the property by him converted. The defendant being chargeable with the value of the cattle and horses at the time of seizure, he cannot be allowed the expense of feeding and improving them, nor credited with $150, value of a horse which died after he took possession. This appears to be a fair disposition of the question under the second and third assignments of error. Defendant having taken possession of the mortgaged property of the value at time of seizure of $1,720, and never having legally foreclosed the mortgages, but converted the property and put it out of the power of the mortgagors to redeem, it seems just that he should be charged with its value. *Powell v. Gagnon,* 52 Minn. 232, 53 N. W. 1148; *Case v. Boughton,* 11 Wend. 106.

3. The fourth error assigned involves the allowance to plaintiffs of the item of $322 for work done by them in the summer and fall of 1901. This item was disallowed by the

referee but allowed by the court, and the question is whether the court erred.    It is admitted that the plaintiffs breached the covenant of the lease with reference to the payment of rent, which was to be paid monthly, none having been paid from June, 1901, to January, 1902, aggregating $655. Plaintiffs were in possession until February 10, 1902, and, before removal, judgment of eviction was entered against them in an unlawful detainer action for failure to pay rent, and an appeal taken, but no bond given for stay of execution, and no writ of restitution issued before removal of plaintiffs from the premises.    The court and referee found that, under the advice of their attorneys, because there was no possibility of carrying out the contract farther, and in view of all the circumstances in the case, and partly because of each of them, plaintiffs left the premises in February, 1902.    It appears from the record that this work of improving was done after the plaintiffs had knowledge that defendant had not furnished sufficient pasture, or, in other words, as they claim, after he had breached his contract.    They also had breached their contract by failing to pay any rent.    It is possible that they continued in possession with the idea that the breaches on both sides might in some manner be healed, but they were not, and conditions seemed to grow worse until plaintiffs' cattle were taken from them under the chattel mortgages. Suit was commenced by defendant to recover possession of the premises because of failure to pay rent according to terms of the lease.    This suit was defended, and resulted in judgment against plaintiffs for the recovery of possession of the premises while they were still in possession.    They appealed, but gave no bond to stay execution; moving out, however, before any writ of restitution was issued, and continuing to fight the case to the supreme court, where the judgment of the court below was affirmed.    *Malick v. Kellogg,* 118 Wis. 405, 95 N. W. 372.    In the unlawful detainer action the defense was set up that the landlord (defendant here) had

failed to perform his contract to make certain improvements
upon the demised premises; but this court held such agree-
ment not one upon which the right to demand rent depended,
and hence no defense to an action of unlawful detainer for
nonpayment of rent. The contention is made by counsel
for respondents here that the plaintiffs voluntarily removed
from the premises and made the improvements and did the
work preparing for the next year before they knew it would
be impossible for them to continue during the second year,
and are entitled to recover the value of such expenditure in
this action; but, according to plaintiffs' own contention, they
knew before they made this expenditure that there was not
sufficient pasture and that the defendant had not performed
his contract, and still they continued in possession, refusing
to pay rent until judgment was rendered against them for
the possession of the premises. This judgment put them in
the wrong, and was a verity until reversed. At the time they
removed it was standing against them, and a writ of restitu-
tion could have been issued at any time. We fail to see, un-
der the circumstances, how their removal can be regarded as
voluntary, in the face of the litigation and judgment against
them. True, the judgments in the circuit and supreme
courts affirming the judgment of the county court were after
their removal, but the judgment of the county court against
them was in force at the time of removal, and it was effectual
in fixing the rights between the parties until reversed. It
established that the plaintiffs themselves breached the con-
tract and were in default. The $322 expended by plaintiffs
was done upon the theory that they might establish their
right to continue in possession for another year and have the
benefit of it, which they failed to do. This item, therefore,
they are not entitled to recover in this action.

*By the Court.*—The judgment of the court below is re-
versed, and the cause remanded for further proceedings in
accordance with law and this opinion.