Logemann and another vs. Pauly.

---

Logemann and another, Respondents, vs. Pauly, Appellant.

*September 24 — October 11, 1898.*

*Damages: Delay in performing contract: Modification of referee's finding: Evidence.*

The question being as to the amount of damages sustained by reason of a delay in performing a contract to furnish a boiler for a vessel, it is *held,* upon the evidence, that it was error for the trial court to modify the report of a referee by reducing the award of damages from $20 to $10 per day during the time the use of the vessel was lost.

Appeal from a judgment of the superior court of Milwaukee county: Geo. E. Sutherland, Judge. *Reversed.*

The cause was submitted for the appellant on the brief of *Austin & Fehr*, and for the respondents on that of *Winkler, Flanders, Smith, Bottum & Vilas*.

PINNEY, J.   This action was brought to recover $2,400, the price of a marine boiler, and $826.17 for work and labor done and materials furnished therefor, which constituted the second cause of action.   As to the second cause of action the defendant admitted an indebtedness of $634.87, denying the remainder, while as to the first he admitted the whole thereof, but alleged a counterclaim by reason of delay in finishing the boiler.   There was a trial before a referee. The only material question for review in this court is whether the amount of damages awarded to the defendant on his counterclaim for delay in furnishing the boiler was erroneous, as being too low.   The referee found that the plaintiffs sold, furnished, and delivered materials to the defendant and performed work and labor for him on and between May 1, 1895, and September 1, 1895, of the value of $826.17. This was the purport of the fourth finding of the referee, and it was excepted to as being contrary to and unsupported by the evidence; but the exception fails to point out the item or items excepted to, and it does not appear to have been seriously pressed.

The third and fourth assignments of error relate to the damages to the defendant upon his counterclaim by reason of want of timely completion of the boiler.   By the contract it was to be ready for delivery April 1, 1895.   It was not so ready, and the referee found it was delivered June 22, 1895, and that defendant lost the use of his steamer " Westover " for eighty-two days in consequence of this delay.   The respondents claim that it should be at least twenty-five days less, but the court affirmed the referee on this point, and it was also found that the delay was not waived by the defendant. It appears that the boiler was ordered for use in one of two

boats operated by the defendant, namely, either the "West-over" or the "A. T. Bliss," both of which were used by defendant for transporting lumber and other freight to and from different ports upon the lakes. The referee found that by reason of the plaintiffs' failure to deliver said boiler at the time specified in the contract, defendant was deprived of the use of the steamer "Westover" for a period of eighty-two days, and that a fair reasonable rental value of said steamer during the time the defendant was so deprived of her use was $20 a day, amounting to $1,640, and that the defendant was entitled to offset against the amount due to the plaintiff for the purchase price of said boiler and the extra work aforesaid the said sum of $1,640, the damages aforesaid, and that the plaintiffs were entitled to judgment against the defendant for the sum of $1,586.17, with interest from September 1, 1895.

The trial court, on motion to review and set aside the report upon the question of the amount of damages the defendant was entitled to recover on his counterclaim, applied the rule in *Shepard v. Milwaukee G. L. Co.* 15 Wis. 318–329, affirmed in *Poposkey v. Munkwitz,* 68 Wis. 322, that "value" and "net profits," in such cases, are convertible terms, and that profits lost are recoverable "when they are not so conjectural and remote as to be incapable of ascertainment with reasonable certainty;" that what the defendant might have made out of his boat for the eighty-two days was what he had lost, whether it was called "value," "rental value," or "net profits," all of which terms, in such connection, mean the same thing; and, on the ground that the defendant's evidence on the subject was conjectural and uncertain, reduced the sum of $20 per day for damages for loss of the use of the boat to $10, making the entire allowance on that ground $820, instead of $1,640. The report was thus modified, and judgment was entered thereon accordingly, as stated.

The evidence, expert and otherwise, on the subject of the defendant's damages by reason of having been deprived of the use of the "Westover" for the period of eighty-two days, took a wide range, and cannot well be condensed so as to be either instructive or useful. It involved no legal principle, and none appears to have been argued in connection with it. It was a question of fact, and of the deduction or conclusion the evidence would warrant. It appeared that the defendant had invested large sums of money in vessel property on the lake for carriage of lake freights, and that the boiler contracted for was designed and meant for use in the steam barge "Westover," chartered by the defendant, and used in connection with the tow barge called the "Bliss," of which the plaintiffs had knowledge before and at the time of the contract; and there was evidence tending to show that by reason of failure to deliver the boiler as agreed the defendant's boats "Westover" and "Bliss" were unable to carry cargoes of freight, and were obliged to lie idle until August 3, 1895; and that, if the plaintiffs had delivered the boiler as agreed, the defendant would and could have carried freight and cargoes during the months of April, May, June, July, and part of August; that the defendant, by reason of the failure of the plaintiffs to so deliver the boiler, was deprived of the use of said boats, and the income thereof, and it was claimed that the reasonable value of the use of said boats during said period was $5,100. It was admitted that at the time the contract was executed the plaintiffs knew the boilers were designed for use in one of defendant's boats. The evidence shows that the boiler was not set out of the plaintiff's shop until June 26, 1895, and that when it was set out it was simply the shell of the boiler, with none of the fixtures and other appliances complete, as required by government regulations, agreed to be furnished and attached to it, ready for water and steam pipes; and there does not appear to be any evi-

dence that the time in which the work was to have been completed was extended beyond April 1st.

In respect to the rental value of a boat of the size, character, and construction of the "Westover," with and without the services of the tow barge, much testimony was produced. E. G. Crosby testified that he had been in the steamboat and transportation business for twenty years and upwards, and was then the principal owner of the Crosby Transportation Company; knew the steamer "Westover," and that during the months of April, May, June, and July, 1895, its fair rental value was $40 per day, and that the fair rental value during the same period of the "Westover" and "Bliss" would be $55 per day. He said that this estimate was for the entire · period, and not for a single day. He explained that what he meant by rental value was what the boat would fetch outside of the crew and fuel,— in other words, what the bare boat was worth; and he testified that boats were frequently rented, and that he did not think the sum mentioned by him was any too large for the boat. On re-examination he testified that a boat like the "Westover" would rent for much more than a large boat, because of its size, draft, and carrying capacity; and that the earlier part of the season, like the months mentioned, were better than the latter part. E. J. Kendall, of Port Huron, a vessel man of long experience, testified that his estimate for the "Westover" was $50 a day, and with the tow barge "Bliss" $10 additional. He also explained the difference in boats, and why one would be of greater rental value than another. He also testified that if the owner desired to rent a boat like the "Westover" he could have found lots of people ready to rent it, because she was a desirable boat, and that he thought she and the "Bliss" could have been rented for the prices named. F. C. Maxson, a vessel man of experience in Milwaukee, testified that in his judgment the "Westover" would be worth $30 to $35 per day. J. A. Calbick, of Chicago, had sailed the

"Westover," and had been in the vessel business for years, and he testified that the "Westover" would be worth $35 a day, and the "Bliss" $10 additional. W. E. Holmes, a vessel broker of Chicago, testified that the "Westover" and "Bliss" were worth from $40 to $50 per day, and that there was a good demand for vessels of this character during the period named.

On the part of the plaintiffs, in rebuttal, Charles G. Forster testified that he was in the lumber business in Milwaukee, and operated vessels in that business since 1892; that freight rates on lumber between April and July, 1895, were from $1.12½ to $1; that the general demand for lumber carrying vessels at that time was light, and he never heard of the rental of steamboats during that period; that all he knew was of a certain boat rented by the Schroeder Lumber Company as a tow, but had not heard of the renting of any steamboat; that it would be hard for him to say, as rates went, what the earning capacity of the "Westover" would be during that period; that that would depend on whether there was a steady run or not; that it might have made, during the time mentioned, $1,200. George D. Sheriffs testified that he was secretary of the Western Malleable & Gray Iron Company, and had had business which brought him in connection with shipping in 1895; that he was posted on the freight rates from Menominee to Chicago; that lumber was carried on the steamer "Joyce" from these ports; that the carrying capacity of the "Westover," which was an iron boat, was about 50,000 feet more than that of the "Joyce," which was a wooden one; that he should say the rental value of such a boat during that period would not be very much because of the low rates of freight, and that, if the owner of the boat should receive $200 a month, that would be getting good pay during that period. There was testimony of various witnesses in reply to and explanation of the testimony given in support of the claim for damages,

and of other facts and circumstances, from which it was claimed that the lower estimates for rental were sustained, and that, notwithstanding the alleged buoyancy of business in 1893 and 1894, testified to by some of the witnesses, the "Westover" was condemned on account of a defective boiler and other needed repairs, August 5, 1893, and she had to be towed home to Milwaukee; and there was no claim that there was anything done to her by way of repair before the contract for a new boiler was made, January 31, 1895, and that she was idle at the docks in Milwaukee river from August, 1893, till August, 1895.

The case, so far as we are able to see, was one of protracted delay in performing an important contract, seriously affecting the defendant in the use of his boats for a period of eighty-two days, and materially reducing his profits in the use to which they were adapted, and to which they would have been devoted. In view of the facts and circumstances appearing in the record, we think that the trial court erred in modifying the referee's report by reducing the award of damages to the defendant from $20 per day, or the gross sum of $1,640, to $10 per day, or $820, for the eighty-two days during which the plaintiffs failed to make timely performance of their contract to complete and deliver the boiler in question. For this reason the judgment of the superior court must be reversed, and the cause remanded to that court with directions to set aside said modification of the referee's report, and to allow the defendant's said damages at the sum of $1,640, as reported and found by the referee, and then give judgment on said report accordingly.

*By the Court.*— Judgment is ordered accordingly.